MARIA LOUISA STRONG et al., Respondents, *v.* THE CITY OF BROOKLYN, Appellant.

| 68 | 1 |
|----|----|
| 125 | 394 |

| 68 | 1 |
|----|----|
| 142 | 182 |

Where a railroad corporation is authorized to appropriate lands only for its own use, for the purposes contemplated by its charter, it is not lawful to add to such use that for street or highway purposes, unless additional compensation is made to the owner of the fee.

Under the charter of the B. and J. R. R. Co. (chap. 256, Laws of 1832), it was only authorized to take lands for its own use, for the purpose of maintaining and continuing its road for fifty years over the designated route.

The said corporation, in pursuance of acts of the legislature (§ 92, chap. 220, Laws of 1853; §§ 4–8, chap. 475, Laws of 1855), executed a conveyance to the city of Brooklyn of a strip of land, the use of which had been acquired by it under its charter. The conveyance was of an absolute title, to be used for the purpose of a public street forever. The city claimed and assumed to take the whole title to the extent of the conveyance, denying the owners any present right. *Held,* that an action of ejectment could be maintained by the owners against the city.

The strip of land so conveyed adjoined Atlantic avenue in said city, on the south side, and after the conveyance it was made part of said avenue. Prior to the conveyance, and while the railroad corporation was still in possession, the owners of lands adjoining the avenue caused maps thereof to be made, showing the avenue and railroad lands, and deeded lots on the north side of the avenue bounded by it, as it appeared upon the maps. *Held,* that the deeds and maps furnished no proof of a recognition of the widened avenue, or of a dedication of the strip of land in question as a part of it.

SICKELS —VOL. XXIII.        1

The railroad corporation deeded the strip of land to the city upon condition, that it have the right to use a space thirty feet wide of the center of the avenue after it had been widened by adding the strip thereto. The thirty feet included a small portion of the land in question, and the south rail of the new track was laid thereon. *Held*, that, conceding the railroad company had a right to use for railroad purposes the piece of land on which said rail was laid, this did not debar the owners of the fee of their judgment in ejectment against the city; that they were entitled to judgment for possession of the premises, subject to the rights therein of the railroad company.

As to whether the transaction preserved to the railroad company any of its rights acquired by the appropriation of the lands, *quære*.

The B. and J. R. R. Company, prior to the conveyance to the city, executed a mortgage upon its road and real estate to secure certain bonds, which mortgage was, after the conveyance, foreclosed, and the mortgaged premises sold to the A. R. R. Company. *Held*, that this did not affect the rights of the owners of the fee; that they could, notwithstanding, maintain their action of ejectment against the city, subject to the right of the purchasing corporation to use the land.

The judgment below was for possession of the premises without reference to the rights of the railroad companies. *Held*, that it was not necessary to modify the judgment, as it would not debar or preclude persons or corporations not parties to the action.

Under the provision of the act of 1862 amending the charter of the city of Brooklyn (§ 41, chap. 183, Laws of 1862), which provides that all streets and avenues in said city which have been thrown out for public use and have been used continuously for five years shall be deemed public streets, there must be an intention on the part of the owner, evinced by some act, that his lands should be permanently subject to the public use for a street, before he can be said to have thrown them out thereto within the purview of the statute.

Merely permitting the land to lie open, unfenced against intrusion, or without claim made to a right of private exclusive possession, does not evince such an intent.

(Argued December 12, 1876; decided December 22, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department in favor of defendant, entered upon a verdict taken, subject to the opinion of the court at General Term.

This was an action of ejectment to recover a strip of land in the city of Brooklyn, fifty feet wide, on the southerly side of Atlantic avenue. The case has been already before this court *sub nomine, Heard* v. *The City of Brooklyn* (60 N. Y., 242).

Plaintiffs' ancestor being seized of forty-four acres, known as the Cowenhoven homestead, bounded south by the old Jamaica turnpike, and west by the road from Flatbush to Brooklyn ferry, embracing the land claimed in this action, conveyed same in 1808, in trust for himself and wife during the life of the survivor, with remainder to his heirs. The life estate ceased in 1853, and plaintiffs being entitled in remainder, the trustees then conveyed to them. The defendants are in the possession of the said land. The legislature, by chapter 256, Laws of 1832, incorporated the Brooklyn and Jamaica Railroad Company for fifty years, to construct, and during its existence to maintain, a railroad from Brooklyn to Jamaica, with authority to appropriate lands for the purposes contemplated by the act, and authorized the appointment of appraisers to assess the damages which each owner would sustain by the appropriation of his land for the use or accommodation of said railroad, and on payment of damages thus assessed the said corporation was to "become entitled to the use of said land *for the purposes aforesaid.*" By proceedings under this act taken in 1834 the company appropriated the use of a strip of said Cowenhoven homestead, eighty feet wide by about 700 feet long, embracing the land claimed in this action, for the purposes contemplated by the act. The company entered upon the land and laid their track and constructed and operated their railroad thereon. Subsequent to the appropriation by the company, and in or about 1838, Atlantic avenue was laid out seventy feet in width by commissioners appointed by the legislature to lay out a general city plan. The seventy feet mentioned included thirty feet of the northerly portion of the strip of eighty feet appropriated by the railroad, leaving the fifty feet wide strip claimed in this action in the undisturbed use of the company. The Cowenhoven trustees, in 1843, by ten deeds conveyed to divers persons all the lots of the Cowenhoven homestead fronting the Brooklyn and Jamaica turnpike south of and extending to "the southerly side of the Brooklyn and Jamaica railroad." Said lots were described by metes and bounds, carrying the same only to the south line

of the railroad strip, but also conveyed the rights of the grantors to the lands forming the old Brooklyn and Jamaica turnpike in front of the lots conveyed. On the 6th of May, 1844, the city obtained from said trustees, for the nominal consideration of five dollars, a conveyance for public streets or highways of certain pieces or parcels of land "known and distinguished on the map of commissioners appointed to lay out streets, avenues and squares in the city of Brooklyn, by the name of  *  *  *  Atlantic avenue,  · *  *  · *  (enumerating all other such streets on the commissioners' map as were within the limits of the homestead tract) and which streets and avenues are laid down on a map entitled 'map of the Cowenhoven homestead, in the Seventh ward of the city of Brooklyn,' Brooklyn, March, 1844, surveyed by Silas Ludlam, city surveyor, and filed in the office of the clerk of the county of Kings, on the 23d April, 1844; to have, etc., as public avenues and streets until closed by lawful authority."

On Ludlam's map of the Cowenhoven homestead, above named, the north line of said Atlantic avenue and the south line of the land appropriated by the railroad is laid down with further intermediate lines to indicate the railroad track, but there is no line drawn to separate the strip in use by the railroad from Atlantic avenue, as laid out by the commissioners, and no figures are given on said homestead map to indicate the width of the Atlantic avenue mentioned thereon. In 1851 the avenue was opened by the defendant, as then laid out on the commissioners' map, seventy feet wide.

In 1853 it was projected to widen Atlantic avenue by including the adjoining strip of fifty feet, then in the use of the railroad, and an act was passed (chap. 220, Laws of 1853) authorizing the company and the city of Brooklyn to agree upon terms for a cession of the railroad bed, including the strip of land in question, to the city of Brooklyn. On the 10th April, 1855, an agreement was entered into between the Brooklyn and Jamaica Railroad Company of the first part, the Long Island Railroad Company of the second part, and the city of Brooklyn of the third part, reciting the authority

given by the act of 1853, and agreeing to convey to the city the strip of land heretofore owned by the Brooklyn and Jamaica Railroad Company on the south side of Atlantic avenue, between Gowanus lane and Classon avenue, for the purposes of a public street forever, in addition to the present width of Atlantic avenue. The city agreed to accept such conveyance "and to grant to the party of the first part and its lessees, successors or assignees, the right to occupy and use a strip of land thirty feet wide in the middle of Atlantic avenue (as the same shall be widened by the addition of the said strip of land so ceded) for the purpose of railroad tracks and turn-outs to be used, traveled over and employed by cars, carriages and locomotives, and otherwise, in the same manner as the railroad tracks on the said ceded strip of land are now in use."

The Long Island Railroad Company agreed at its expense to remove the railroad tracks from the land ceded and relay them in the middle of the avenue on said thirty feet above named. On the 13th April, 1855, the legislature passed an act authorizing the city to widen Atlantic avenue to 120 feet, in which they ratified the agreement above named and authorized both the cession and acceptance of the strip (which was therein also described as owned by said company) to be held by the city in fee simple absolute. On the 20th August, 1855, the Brooklyn and Jamaica Railroad Company conveyed to the city the strip of land in question therein also described as owned by the Brooklyn and Jamaica Railroad Company and as adjoining the southerly side of Atlantic avenue. It is alleged in the complaint that about April, 1855, the said company removed its railroad tracks from the land in question and intended to, and did, discontinue and abandon the use of said land. The answer admits these allegations, except that it also avers that a certain horse railroad company as the assignee of the Brooklyn and Jamaica Railroad Company now holds and occupies part of the land referred to in the complaint.

It was admitted that the land described in the complaint

had been entered upon by the defendant, who had paved, guttered and flagged it as a public street, and that the same still remained so paved, guttered and flagged; that defendant had built sewers and laid gas and water mains and pipes under the surface and erected lamp-posts upon the land, all of which structures still remain.

When the rails were moved in 1855 from their old location, they were placed, in pursuance of the terms of the agreement of April 10, 1853, on the thirty feet strip in the center of Atlantic avenue (as widened) in such position that one rail of the up track was located from two to four feet upon and over the northerly edge of the land claimed by plaintiffs, and has since remained there.

Defendants gave in evidence chapter 63, Laws of 1862, entitled "an act to amend an act entitled 'an act to consolidate the cities of Brooklyn and Williamsburgh, and town of Bushwick, into one municipal government, and to incorporate the same,' passed April 7, 1854, and the several acts amendatory thereof, and supplementary thereto, or affecting the same," which contains the following provision:

"§ 41. All streets and avenues in said city which have been or may be thrown out to public use, and have been or may be used as such for five years continuously, shall be deemed and taken to be public streets and avenues, and the city of Brooklyn, and the common council, and the water commissioners thereof, shall have all jurisdiction and power in respect thereto, the same as if such streets or avenues had been or shall be opened by proceedings had for that purpose under the provisions of this act."

The trustees of the Cowenhoven homestead made sixteen deeds, dated 6th May, 1844, conveying to divers private persons the lots on their map fronting on the north side of Atlantic avenue, making reference in the descriptions to the map of the Cowenhoven homestead, and bounding them on the northerly line of the avenue.

On 20th October, 1855, the Brooklyn and Jamaica Railroad Company mortgaged all its property and franchises to trustees

to secure payment of bonds to be issued to certain of its creditors as evidence of the antecedent indebtedness of the company to such creditors. The mortgage was foreclosed in 1872, and the rights of the Brooklyn and Jamaica Railroad Company to the mortgaged property were purchased by the Atlantic Avenue Railroad Company, which on and under its said purchase entered upon and has since continued a use of said tracks laid on the thirty feet strip in the center of the avenue as before named.

Further facts appear in the opinion.

*William C. De Witt* for the appellant. The Brooklyn and Jamaica Railroad Company acquired a determinable fee, and not a mere easement to the lands in fee. (*Munger* v. *Ton. R. R. Co.*, 4 N. Y., 349 ; 26 id., 432 ; *Seneca R. R. Co.* v. *A. and R. R. R. Co.*, 5 Hill, 181 ; *Jackson* v. *Rutl.* [ *Vt.*] *R. R. Co.*, 25 Vt., 150, 116 ; *Brainard* v. *Clapp*, 10 Cush., 6 ; Laws 1832, chap. 256, §§ 16–22 ; Laws 1850, p. 211, § 13 ; id., 225, § 18, sub. 10 ; *Wager* v. *Troy R. R. Co.*, 25 N. Y., 530–533 ; 2 R. S., 303, § 3 ; *Rowan* v. *Kelsey*, 18 Barb., 484; *Hurd* v. *R. and B. R. R. Co.*, 25 Vt., 116 ; *T. and B. R. R. Co.* v. *Potter*, 42 id., 265 ; *C. and P. R. R. Co.* v. *Holton*, 32 id., 43.) Ejectment will not lie against a city because it assumes to treat private property as a street. (*Cowenhoven* v. *City of Bklyn.*, 38 Barb., 9.) The land had become a street under the act of 1862 (chapter 63). (*Requa* v. *City of Rochester*, 55 N. Y., 129 ; *McMannis* v. *Butler*, 49 Barb., 176 ; *Lane* v. *Spears*, 1 Wend., 433 ; *Hassenfrats*, 13 id., 466.)

*D. D. Lord* and *Samuel B. Higenbotam* for the respondents. The right of the Brooklyn and Jamaica Company in the land was incapable of transfer to the Brooklyn Central Company. (*People* v. *A. and W. R. R. Co.*, 24 N. Y., 268.) Plaintiffs' rights are not barred by the act of 1862 (chap. 63, § 41). (43 N. Y., 10 ; 42 id., 46, 404; 38 id., 193 ; 35 id., 449 ; 54 Barb., 169; 22 id., 634; 34 How., 508.) Statutes appropriating private property for public use must be strictly

construed. (*R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 146;
*In re N. Y. and H. R. R. Co.* v. *Kipp*, 46 id., 546; *Adams*
v. *S. and W. R. R. Co.*, 10 id., 328; *Sharp* v. *Spier*, 4 Hill,
16; 7 Redf. on Railways, 250; *Charles River Bridge* v. *Warren
Bridge*, 11 Pet., 420.) If the Brooklyn and Jamaica Railroad
Company acquired only an easement in the land, it is not
material to this action whether such easement has or has not
been abandoned. (*Goodtitle* v. *Alker*, 1 Burr, 133; *Perrin*
v. *N. Y. C. R. R. Co.*, 36 N. Y., 120; *Clinton* v. *R. R. Co.*,
66 Penn., 404; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y.,
97, 108. The act of 1862 (chap. 63, § 41) as a statute of lim-
itation would be unconstitutional, it being a local act, and not
expressing any such subject in its title. (Const. 1846, art. 3,
§ 16; *People ex rel. Lee* v. *Suprs.*, etc., 43 N. Y., 10; *Pull-
man* v. *Mayor*, etc., 54 Barb., 169; *Gaskin* v. *Meek*, 42 N.
Y., 86; *People* v. *O'Brien*, 38 id., 193; *People ex rel.
McConnell* v. *Hill*, 35 id., 449; *Schenectady Obs.* v. *Allen*, 42
id., 404; *Town of Fishkill* v. *Fishkill P. R. Co.*, 22 Barb.,
634; *Smith* v. *Mayor*, etc., 34 How., 508.)

FOLGER, J. This case was before us in 1875 (*sub nom.
Heard* v. *The City of Brooklyn*, 60 N. Y., 242), and some of
the points now made by the appellants are met by the opinion
then rendered.

First. It is claimed that the Brooklyn and Jamaica Railroad
Company acquired a determinable fee, and not a mere ease-
ment, in the lands in suit. It is then said, that the right of
the plaintiffs is a reversionary interest, taking effect only
when the estate of the railroad company has ceased. And it
is insisted, that the right to a reversion will not support an
action of ejectment.

It matters nothing, what the interest had by the railroad
company is called, if that interest has ceased. And the deci-
sion of this case before, was put fairly upon the ground that it
had, and that on that cessation the plaintiffs were entitled to
resume possession. But it was further held, that the fee
remained in the plaintiffs; that the right of the railroad was

a right to use, for the purpose of operating its road, and no more.

The appellant strives to make out, that the lands were not taken for a mere right of way or other easement, but that there was an appropriation of the lands. An examination of the charter of the railroad company, shows that it was authorized to appropriate the lands; yet only for *its own use*, for the purpose contemplated by the charter. That purpose was to maintain and continue a railroad for fifty years over a designated route. All the legal proceedings for the taking of the lands, show that that was the appropriation made, and that the damages were assessed for such an appropriation. The right of appropriation was given and exercised, but it was only for a use limited in time, and in kind or purpose. *The New York and Harlem Railroad Company* v. *Kipp* (46 N. Y., 546) is not in point. The proceedings there taken were under the general railroad acts which give power, in certain cases, to acquire the whole title to lands, for public use. Having held before, in this case, that the purpose and use for which the appropriation was made, and for which the damages were assessed and paid, had ceased by the acts of the railroad company, we will adhere to that decision, until reason for change is shown in a new state of facts.

Second. The second point of the appellant was also disposed of by the former decision. It was distinctly held, that where lands are taken for use by a steam railroad company for its purposes, it is not lawful to add to such use, that for street or highway purposes, unless additional compensation is made to the owner of the fee.

Third. The third point of the appellant is, that whether or not the railroad company had a right to convey any title to the city to the lands; yet, that they were in the use of a railroad company, and so open as to be accessible on all sides, and liable to be made the means or occasion of violation of the city ordinances, and that the city had the right to exercise police and governmental power over the lands.

If this were all that the defendant had done, or sought to

do, and made no other claim, there would be slight necessity for a consideration of this case so often by the courts. The proofs show that the city assumed to take, and assumes to hold, a proprietary right in the lands (or some portion of them), to the exclusion of any present private right of, and possession in, the plaintiffs. The agreement between the city and the railroad company, is for an absolute ceding and conveyance of the strip of land, to be used for the purpose of a public street forever. This, however, is a condition which the railroad company might waive, or from which it might release the city. The railroad company agreed to grant absolutely and forever, and did as far as it was able, grant to the city all title to the lands, without restriction to that right which had been acquired from the plaintiffs' ancestor, subject only to the condition above named. This title was more than a right of possession for a term of years, excluding the plaintiffs for that time only. The city assumed to take the whole title to the extent of the conveyance, and claimed it before and at the commencement of this action.

In connection with this point the defendant claims that ejectment will not lie against a city, because it assumes to treat private property as a street. And it may be conceded, that where the only claim made is that of a right of way over the lands, acknowledging the existence of the owner's fee in the soil, and his right of immediate possession and use, subject to the right of way, ejectment is not the most proper action. The Revised Statutes (vol. 2, p. 304, § 4) say, that, to sustain an action of ejectment, there must be an actual occupancy by the defendant, or the exercise of acts of ownership, or claim of title or interest, at the commencement of the suit. And it is said by DENIO, J., in *Childs* v. *Chappel* (9 N. Y., 246), that the claim of title must be such, that if reduced to possession or enjoyment it would constitute an actual occupation of the premises. We think the actual occupation meant is one as against the plaintiffs. Now, if the city had reduced its claim of title to actual possession, would it not exclude any present individual possession by the plain-

tiffs? They might use the lands for passage over them, as members of the public, but could have no personal or protracted right in them, so long as the city kept a possession as extensive as the claim. *Cowenhoven* v. *City of Brooklyn* (38 Barb., 9) is cited to show that ejectment will not lie for lands held only as a highway. There, however, it does not appear that it was claimed by the city that the owner had no private right in the premises. Indeed, the case was put upon the ground that the owner of the fee, if he denied the right to an easement over his lands, could take possession and maintain trespass *quare clausum* for the disturbance of himself, in the use of the easement. Ejectment has been sustained, in prior decisions of this court, in favor of the owner of the fee in a highway or street against a railroad company, which had laid its tracks thereon and was operating its road. It was, as suggested by the appellant in one of its points, so held because of the setting up of a new proprietary interest in the highway. The city here seeks to keep up the proprietary interest once held by the railroad company in these lands. It will not do, as is done by the defendant, in one breath to say that by the conveyance from the railroad company, that proprietary interest has ceased, and the premises are now held only as a public street; and in another, we need not pay you as owner of the fee any compensation for taking your lands for use as a public street, for we have acquired the right to them which was in the railroad company, for which you have been paid. The latter was the claim of the defendant at the commencement of the action. Where there is a right of way in the public, the owner of the fee may maintain ejectment against one, who takes possession and claims to hold it excluding the owner. (*Goodtitle* v. *Alker*, 1 Burr., 133; *Jackson* v. *Hathaway*, 15 J. R., 447.) And the owner of the fee of land, over which another private person has a right of way, may maintain a writ of entry against the person having such right of way, who is occupying the entire possession, and denying demandant's seizin. (*Morgan* v. *Moore*, 3 Gray, 319; *Hancock* v. *Wentworth*, 5 Metc., 452.) The defendant is in

an analogous position. It claims to hold the premises for the public use as a street ; but it claims to hold them as occupying the entire possession, and denying the plaintiff any present right.

Fourth. The point raised, upon the evidence of a dedication of the premises to public use, shown by the conveyances of the plaintiffs' ancestor, and the maps therein referred to, was considered, as to some of that evidence, in the former decision. It was held that the evidence then in the case did not make proof of a dedication. The deeds then in evidence, it was said, did not recognize Atlantic avenue as more than seventy feet in width. Those deeds were in 1844. It was not until 1855 or after, that the premises now in question, became any part of Atlantic avenue. The deeds not then produced, but in evidence on the last trial, were also in 1844, and they convey no part of, or interest in, the premises in question, unless they do so by the mention of Atlantic avenue as laid down on the maps in the deeds referred to. These deeds and these maps were made before 1855, while the railroad was still in the possession of the premises, and before they had been made a part of the widened Atlantic avenue. The deeds then, referred to the narrower Atlantic avenue, and did not affect the strip of land in question. For the reasons given in our former decision, no proof is furnished by those deeds and maps of a recognition of the widened avenue, or of a dedication of this strip as a part of it.

Fifth. Another point made is, that the plaintiffs can recover no more of the land appropriated by the railroad company than what has been since abandoned by it. It does appear in proof, that when the rails of that company were taken up from the south side of the strip, and laid down again with the intention of putting them in the center of the widened Atlantic avenue, they were so laid, as that they were upon the premises described in the plaintiffs' complaint, four feet at one end of the premises and two feet four inches at the other. The judgment recovered by the plaintiffs is for the possession of the whole strip of fifty feet wide, and if literally

carried out will put them into possession of one or more rails of the railway track along the avenue. If it be conceded that the railroad company, or its successor in actual use, the Brooklyn Central Railway Company, have a right to use, for railway purposes, the piece of land on which the south rail is laid, this would not debar the plaintiffs of their judgment against the city. It might still be, as is a judgment of the owner of the fee in lands subject to a way, against the owner of the right of way who has set up an exclusive possession. The owner has judgment against the trespasser, of possession of the premises, but subject to the easement; or, if the way was a public highway, the judgment would be one of possession of the lands, subject to the public easement. So here, the judgment might be for possession of the premises, subject to the right therein of the railway company. (*Perrin* v. *N. Y. C. R. R.*, 36 N. Y., 120.) But the plaintiffs contend that there is no right in the railroad company, or its successors in use, to occupy this small piece of the fifty feet strip. It is claimed by the plaintiffs that the railroad company conveyed to the city the entire strip of fifty feet, and thereby abandoned the use of it for railroad purpose, and lost all right in it. For answer to this the defendants say, that the railroad company did not convey to the city that portion of the fifty feet strip upon which the rails lay, but excepted that from the conveyance and retained it. We do not find that in the appeal book which sustains this position of the defendants. The agreement between the railroad company and the city is given at length. It is to cede and convey to the latter, the strip of land described, in the act of April 13, 1853 (Laws of that year, chap. 220, p. 42, § 92; see also, Laws of 1855, chap. 475. p. 854, §§ 4–8), upon the condition that the railroad company have the right to use and occupy a space of thirty feet wide in the center of the avenue, after it has been widened. The city agrees to accept the cession of the strip, in pursuance of that act, and to grant to the railroad company the right to use and occupy the thirty feet wide. There is no limitation of time in either instrument. Turning

to the acts above cited, and we find that the power conferred by them, is to cede to the city all the strip of land owned by the railroad company south of the south line of Atlantic avenue, as it then was, unwidened. The deed which was made by the railroad company, in pursuance of that act, and of the agreement, is not given in full in the appeal-book, and its exact terms we do not know. It is stated to have been in pursuance of the agreement and in virtue of the acts, and to convey a strip of land fifty feet in width, and we may presume it contained the same conditions as are found in the agreement. The acts of the legislature provide for a cession to the city by the railroad company; that there shall be a complete cession to the city of the whole strip, and of all the right of the railroad company in it; and that any interest which the company may have in it, is to be by conditions of the cession agreed upon between them. The agreement with the city expresses the condition, and it is to be presumed that the deed to it does the same. One of the conditions is, that the railroad company shall have the right to use and occupy a space thirty feet wide in the center of Atlantic avenue, after it is widened; and the city on its part agrees to grant to the railroad company the right to occupy and use. It is to be observed that there is nothing here of a reservation of the rights of the railroad company. There is a conveyance, with no exception therefrom, of the premises and all its rights therein, without limit of time or quantity, to which there is affixed a condition that it shall have the use and occupation to a certain extent. It may be doubted, whether this transaction preserved to the railroad company, any of its rights acquired by the appropriation of the lands for its use, and the payment of the damages therefor. But we may not pass upon this question here to the detriment of that company or its successor in use, as they are not parties before us. It is enough to say, that the facts stated do not defeat the plaintiffs' action against the city, and could only affect the form of the judgment.

Sixth. The same may be said as to the Atlantic Avenue Railroad Company, and its possession of the premises or any

part of them.   By the mortgage to trustees and the foreclosure thereof, and the purchase at mortgage sale, that company obtained no more than the Brooklyn and Jamaica Railroad company had to convey.   Yet, it obtained all that the latter had to convey.   If that was all the right which the latter had in the premises, by virtue of the original appropriation of them, then the city acquired no right by the acts of the legislature, and the agreement and the deed above noticed.   The plaintiffs are still the owners of the fee, subject to the right to use of the railroad companies, and may maintain this action against the city, and take judgment of possession, and against the city, subject to the right to use of the railroad companies. It is not needed, nor is it useful, that we now inquire what rights in the premises are held by corporations, not parties to this action, and who cannot be affected by our judgment; nor is there need that the form of the judgment rendered in the court below be modified, for it will not debar nor preclude persons or corporations not parties to this action.

Seventh.  An act of the legislature, passed in 1862, (Laws of 1862, chap. 63, p. 182, § 41), provided that "all streets and avenues in said city, which have been or may be thrown out to public use, and have been or may be used as such for five years continuously, shall be deemed public streets and avenues," and the city and its officers were given " jurisdiction and power in respect thereto, the same as if such streets and avenues have been or shall be opened by proceedings had for that purpose.   *    *    *"

It is claimed by the defendants that there was testimony in the case, which tended to show that the plaintiffs, or their predecessors in interest, had so acted or omitted to act, as that they had evinced an intention to throw out the premises to public use.   It is not conceded by the plaintiffs that there was such an intention.   The statement of facts by the General Term is, that there was not a throwing out of the land to public use, nor any dedication of it.   If there be the testimony in the case which the defendant claims, the only way in which it is available to it here is, upon the

exception taken to the refusal of the trial court, "to submit the case to the jury on the question of intent to dedicate, and generally." We think that a correct interpretation of this act, requires that there should be an intention on the part of the owner, that his lands should become permanently subject to the public use for a street, before he can be said to have thrown them out thereto in the purview of the statute. We think further, that the intention must be evinced by some affirmative act of his, and that merely permitting his land to lie open, unfenced against intrusion, or without claim made of a right to private exclusive possession, will not be taken for such an act. It is to be observed that the law does not say that all lands, which shall be thrown out to public use; it says all streets and avenues. At the time when thrown out, and for the term of five years continuous use, the premises must be in the shape and for the purpose of streets. It is not unusual, that in the vicinity of cities and villages tracts of land lie unfenced, open to the common use for many years, and that well-defined ways of passage are gradually formed across them. It would not be held that in such case, after five years of such use, a municipality with such a provision in the charter, would have the same right to the ways thus formed, as if they had been laid out by proceedings had for that purpose. The purpose of the statute evidently is, to provide for the case of an owner of a tract of land in the city, who had laid it out into lots, and planned and marked out streets upon it, and had thus and by other like measures, invited the public use of them, without in any more technical or formal manner investing the city government with a right to take them into possession and control. And the initiatory act of the throwing out to the public use, must be an indication by the owner that for such length and width over his premises, a street or way is accorded for the public use. Like the Brooklyn statute, is that of the city of Rochester, which came under notice in *Requa* v. *City of Rochester* (45 N. Y., 129). A reference to the opinion in that case, shows that some act of the owner inviting or yielding to public use, is needful for an opening or throwing open to

the public, and that it is the opening of a street as a street or way, that is intended by the statute. The act is not a statute of limitations, which debars the maintenance of a right, because the possessor of that right has slept upon it for a given length of time. It is a statute which makes definite and decisive in favor of the municipality, action which was not at first mutual. A dedication of a way does not become final and conclusive upon the owner, until there is acceptance of it, by the public or a private person interested to accept. This statute comes in place of an acceptance by the public authorities, when five years have elapsed of continuous proffer by the owner and of use by the community. (See *The Atty-Genl.* v. *M. & E. R. R. Co.*, 4 C. E. Greene [N. J.], 386.) It is plain that in this case there was no such act upon the part of the plaintiffs, or their ancestor. The premises have been, so far as they were concerned, in the actual possession of the railway company, or in actual use by the public, with the assertion of authority over them by the city or its official agents. There has been no opportunity for the plaintiffs to do any act, which would express the throwing out to the public use, contemplated by the statute. As there was no evidence upon which a jury could find such an act, it was not error to refuse the request of the defendant, to go to the jury upon that question.

We think that the plaintiffs must recover.

All concur except CHURCH, Ch. J., and ANDREWS, J., not voting.

Judgment affirmed.