## WILLIAM LINN DE WITT, APPELLANT, v. THE VILLAGE OF ITHACA, RESPONDENT.

*Dedication—what constitutes—what an acceptance—by the grantee—by the public authorities — Judgment for plaintiff in ejectment subject to an easement— when ordered.*

When the owner of a tract of land lays it out on a map into village lots, intersected with streets and alleys, with public squares thereon, and conveys lots designated upon it, with reference thereto, he thereby dedicates such streets, alleys and squares to public use to the extent and as designated on the map.

As between the parties, the dedication is complete upon the delivery of the deed; as to the public, upon an acceptance by the public authorities which may be shown by a user of the lands so dedicated.

Where, in an action of ejectment, it appears that the property is subject to an easement, judgment that the plaintiff have possession subject to such easement, is not ordered, unless it appears that the defendant has been guilty of some unlawful and unauthorized interference with plaintiff's rights.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

This action was brought by plaintiff to recover of the defendant the possession of three public parks in the village of Ithaca. The plaintiff claims one-fourth of these parks as one of the four heirs of Simeon DeWitt, and also an additional fourth as the purchaser of the interest of his sister, Mary Linn DeWitt. The defense was dedication.

Simeon DeWitt, June 14, 1831, was the owner of a large amount of land in the village of Ithaca, including the rectangular piece described in plaintiff's complaint, and which is now known as Washington Park, and at the time of his death, December 4, 1834, he was still the owner of a large amount of property in said village, including, in addition to the above, the two triangular pieces described in plaintiff's complaint, and which are now known and described as Lafayette Park and the Clock Factory Park. In 1831 he made a map, bearing date June 14, 1831, on and by which he laid out a portion of his premises in the village of Ithaca into lots, blocks, streets and a piece of land marked on said map "Public Square," which "public square" is now known and called "Washington Park." This map General DeWitt used as a map of that portion of his

premises until his death in 1834, during which time he executed a large number of conveyances to different parties, describing the premises therein contained by numbers of lots "on a map" or "on the map of the village of Ithaca," which numbers and the other descriptions connected therewith correspond with the numbers on this map. Simeon DeWitt was at that time the Surveyor-General of the State of New York, and the most of this map was proved to be the work of his own hand.

In August, 1831, Simeon DeWitt, for and in consideration of $250, conveyed to Richard Varick DeWitt a piece of land "distinguished on the map of the village of Ithaca as lot number seventy-nine of the lots in said village, laid out north of Mill street, bounded, etc., * * * having its southwest corner opposite to the northeast corner of the public square there located," and which public square is now called Washington Park. After the death of Simeon DeWitt, his executor, to whom a power of sale was given by the will, conveyed other lots designated on a map made under their direction, on which Washington, La Fayette and the Clock Factory Parks, were laid out, the former being marked "Public Square," the two latter "Public," the deeds referring to it in the descriptions. After the making and filing of the map the plaintiff, William Linn DeWitt, by several conveyances recognized it and made grants with particular reference thereto. It also appeared that in 1850, and subsequent thereto, the village of Ithaca fenced and filled the squares designated in the map, and improved and used the same. The referee held that there had been a dedication to the pubblic use of the Washington Park by the testator, though such dediction was not in his life-time accepted by the public. That there had been a dedication to the public by the executor, by his sales under the power given to him, of the lots constituting Washington, LaFayette and the Clock Factory Parks, and such dedication had been accepted by the public, and that plaintiff was not entitled to recover.

*J. M. Finch*, for the appellant.

*S. D. Halliday*, for the respondent.

BOCKES, J.:

The question presented on this appeal relates solely to the law

of dedication, and the facts are clearly, and, as we think, sufficiently certified to us for an application of well-settled principles. First. In regard to the rectangular piece of land described in the complaint, and known as "Washington Park," it seems that the premises formed part of a farm or considerable tract of land owned by Simeon DeWitt, the father of the plaintiff, lying within the limits of the village of Ithaca; and that in 1831 such owner laid out a portion of the premises into lots, blocks and streets, and made a map thereof and numbered the lots, and also designated thereon the rectangular piece above referred to, very manifestly for public enjoyment as a village park. Mr. DeWitt, until his death, which occurred a few years thereafter, recognized the map, and made it a basis for conveying lots thus laid out and plotted; and afterwards, to the present time, those having charge of and owning the premises immediately surrounding said park have recognized it in its public use, and have conveyed lots as designated on the map, referring thereto in the conveyances, and this has been the general action of those claiming title from and through Mr. DeWitt, the original owner. So, too, as early as 1848 or 1850 the municipal authorities assumed possession and control of the plot for public use, and continued such possession and use to the present time, having ornamented and improved it, and in all respects controlled it and used it as a public square or park. Now, the settled rule of law applicable to the case is this, that when the owner of a tract of land lays it out into village lots, intersected with streets and alleys, and with public squares, such streets alleys and squares are thereby dedicated to public use, to the extent and as designated on the map, where conveyances are made having reference to such designation. So it was said in Post v. Pearsall (22 Wend., 425, 435), that where the owner of land has laid out village lots intersected with roads and public squares, it has been repeatedly held, and very justly, by various judicial tribunals, that such roads and public squares are dedicated to public use. (See cases cited on page 435.) In the case of conveyances referring to the map, the latter becomes an essential part of the deed itself; and as between the parties to the conveyance the use of the streets, alleys and squares laid down on the map, becomes an easement annexed to the estate granted.

(*Taylor* v. *Hopper*, 62 N. Y., 649, and cases there cited.) As between the parties, the dedication is complete on the delivery of the conveyance. As to the public, there must be an acceptance; and this will be held effectual on adoption and user by the public authorities. (*Matter of Ingraham*, 11 N. Y. Sup. Ct., 4 Hun., 495; *Strong* v. *City of Brooklyn*, 68 N. Y., 1; *Niagara Falls Susp. B. Co.*, v *Bachman*, 66 N. Y., 269.) Here the acceptance by the municipal authorities seems quite conclusive before there was any revocation; and indeed there is nothing before us indicating an intended revocation by any one before bringing this action. We think the case very conclusively against the plaintiff's right of action as regards the plot known as " Washington Park."

And so as to the other two plots known as La Fayette Park and Clock Factory Park, they were laid down on the map made in 1835, by R. V. De Witt, executor of the last will and testament of Simeon DeWitt, deceased, who thereafter made conveyances of lots designated thereon, under a power of sale conferred on him by the will. After the making and filing of this map, the plaintiff, William L. DeWitt, by several conveyances, recognized the map and made grants with particular reference thereto. These acts, as we have seen by the above authorities, operated as a dedication binding on him of those plots laid out on the map for public use as parks, and the dedication became binding and conclusively operative upon him so soon as the municipal authorities accepted of the dedication and adopted them by public use. Even if there were others interested in the property, he was concluded from gainsaying the effect of his own acts. We have no difficulty in reaching the conclusion that there was a dedication of the three plots to public use; and further, as the referee has found, that by the acceptance of such dedication by the village authorities, the same became perfected and irrevocable against any and all claim which the plaintiff can make, affecting the easement to be enjoyed by the public.

We have not found it necessary to examine the question whether there was not a legal and effectual dedication of the second and third plots described in the complaint, by the action of the executor in his execution of the power of sale conferred on him by

Simeon DeWitts' will. It is urged that, admitting a valid and effectual dedication, then the plaintiff should have judgment for the possession, subject to the easement, and we are cited to authorities in support of this position. But it will be found that when such judgment has been allowed, there has been some unauthorized or unlawful action by the defendant against the plaintiff's rights, some occupation greater than an exercise of lawful use of the premises by the defendant. Certainly here, as it was found, there was no unlawful entry, no trespass upon the plaintiff's proprietary rights, no unlawful occupation or withholding of possession. The right of action in ejectment was not, therefore, established.

We are of the opinion that the complaint was properly dismissed, and that the judgment should be affirmed.

LEARNED, P. J., concurred; BOARDMAN, J., not acting.

Ordered accordingly.