## SUPREME COURT.

### HARRIET BEAL agt. THE N. Y. C. AND H. R. R. Co.

*Railroads — Real estate taken for railroad purposes — Use for which land is taken not limited in time — Time such use shall continue within the discretion of the legislature — Laws of 1833, chapter 294 — Utica and Schenectady Railroad Company — Whether the company acquired a fee or mere easement in the land.*

The Utica and Schenectady Railroad Company took *a fee* to the land taken by proceedings — *in invitum* — under its charter, granted in 1833 (*Laws of 1833, ch.* 294), although the charter limits the duration of the company to fifty years.

Even assuming the plaintiff never to have been deprived of the fee in the premises in suit and still to be such owner, yet such ownership is subject to public use by defendants for railroad purposes, which use has not ceased or determined, and therefore she is not entitled to the possession of the property and cannot maintain this action (*Heard* agt. *The City of Brooklyn,* 60 *N. Y.,* 242, and *String* agt. *The City of Brooklyn, distinguished ; Terry* agt. *The N. Y. C. and H. R. R. Co.,* 67 *How.,* 439, *commented on*).

*Oneida Circuit, March,* 1886.

THIS action is brought to recover real property and the possession thereof. The property in dispute is a portion of the road bed occupied by the defendant in or near the village of Amsterdam, Montgomery, N. Y. The facts are agreed upon and the only questions to be determined are questions of law.

The Utica and Schenectady Railroad Company was incorporated by an act of the legislature of the state of New York, passed April 29, 1833 (*chap.* 294), with authority to construct

VOL. III.          42

a single, double, treble or quadruple railroad or way between the cities of Utica and Schenectady.

By section 1 of that act it was provided the corporation should be vested with the right and privilege of building and constructing the road and using the same for and during the term of fifty years.

By section 7 it was provided the corporation was thereby empowered to purchase, receive and hold such real estate as might be necessary and convenient for its objects, and it should be lawful for the corporation to enter upon, take possession of, and use all such lands and real estate as might be indispensable for the construction and maintenance of the road, but all lands or real estate which were not donations should be purchased of the owner thereof, and at prices to be mutually agreed upon.

In case of a disagreement as to price and before making any portion of the road upon such lands, the directors of the corporation might present their petition to the chancellor, who should appoint three disinterested and competent freeholders of the county in which the lands were situated to be commissioners to appraise the lands. The commissioners should appraise the lands and should award to the owners thereof what they should deem to be the full value thereof, and should report their appraisement to the court of chancery. The chancellor should examine the report and determine on the same, and within thirty days after his determination, upon proof to the chancellor of the payment to the owner, or deposit to the credit of the owner in such bank as the chancellor should direct, of the amount of such appraisement and payment of all the expenses attending the appraisement, the chancellor should make a decree or order describing the lands and reciting the appraisement and the mode of making it, and all other facts necessary to a compliance with the section (7) of the act; and when the decree or order should be recorded in the office of the clerk of the county in which the lands were situated, the corporation should be possessed of all the lands for the purpose of the road, and might enter upon, take possession of and use the same; and by section

Beal agt. N. Y. C. and H. R. R. Co.

19 it was provided the legislature might at any time alter, modify or repeal the act. ·

The corporation after it was organized, instituted proceedings under this statute to acquire title to the premises which are the subject matter of this action; the money therefor was paid, the decree or order was made by the court of chancery and was recorded in the clerk's office of Montgomery county May 19, 1836, and the corporation took possession of the premises, built and constructed the railroad and operated it over the premises until the year 1853, when the corporation was duly and legally consolidated with other railroad corporations into a corporation known as the New York Central Railroad Company, under and pursuant to the provisions of chapter 76 of the Laws of 1853.

By section 4 of that act it was provided that upon such consolidation being effected all and singular the rights, franchises and interests of the corporations so consolidated in and to every species of property, real, personal and mixed, and things in action thereto belonging, should be deemed to be transferred to and vested in such new corporation without other deed or transfer, and such new corporation should hold and enjoy the same, together with the rights of way and all other rights of property, franchises and interests, to the same extent as if the several corporations consolidated should have continued to retain the title and transact the business of such corporations, and the title and real estate acquired by either of the corporations should not be deemed to revert or be impaired by means of such consolidation or anything relating thereto.

This new corporation, from the time of the consolidation in 1853, maintained and operated its railroad over and along the premises in question until the year 1869, when it was legally and duly consolidated with the Hudson River Railroad Company, another railroad corporation, into a new corporation, known as the New York Central and Hudson River Railroad Company, under and pursuant to the provisions of chapter 917 of the Laws of 1869.

By section 4 of that act (which differs in language to some extent from section 4, chapter 76, Laws of 1853), it was provided that upon such consolidation being effected all and singular the rights, privileges, exemptions and franchises of each of the corporations, and all the property, real, personal and mixed, and all the debts due on whatever account to either of the corporations, as well as all stock, subscriptions and other things in action belonging to either of the corporations, should be taken and deemed to be transferred to and vested in such new corporation without further act or deed; and all claims, demands, property, rights of way and every other interest should be as effectually the property of the new corporation as they were of the former corporations; and the title to all real estate taken by deed or otherwise, under the laws of this State, vested in either of the corporations, should not be deemed to revert or be in any way impaired by reason of that act, or anything done by virtue thereof, but should be vested in the new corporation by virtue of the act of consolidation.

Since this consolidation the New York Central and Hudson River Railroad Company has been and still is maintaining and operating the road over and along the premises in question.

The theory of the plaintiff's cause of action is, that she was originally the owner in fee of the premises in question; that the Utica and Schenectady Railroad Company, under its decree or order, recorded May 19, 1836, did not take a fee in the premises, but only an easement for railroad purposes for the term of fifty years, and that this term having expired by lapse of time, she is now entitled to be repossessed of the premises.

The defendant, on the contrary, claims, under the decree or order, the railroad company took title in fee to the premises and left no estate whatever in the plaintiff, and if it took an easement simply, and not a fee, the defendant is still entitled to use the premises for railroad purposes, although the fifty years have elapsed, and this because the term of fifty years has been extended by the legislature, and because the premises, having

been taken for a public use, so long as that public use is continued there can be no reversion to the original owner.

*C. W. White*, for plaintiff.

*D. M. R. Johnson*, for defendant.

WILLIAMS, J.—The first question is, what estate passed under the decree or order in chancery from plaintiff to the railroad company? Was it an easement or a fee? If it be conceded the term of existence of the railroad corporation was fixed at fifty years, this fact would not have restricted the corporation from taking a fee (*Nichols* agt. *The N. Y. and E. R. R. Co.*, 12 *N. Y.*, 121–128).

The question seems to be, what interest in the property the charter of the railroad company provided should be vested in or conferred upon the corporation.

The counsel for defendant argues, from the language of the charter this interest was a fee, and cites from *Wood's Railroad Law* (*vol.* 2, *p.* 764) the proposition:

"The question as to whether the charter authorized the taking of a fee or an easement is one of construction to be determined by the courts, in view of the language used in the act giving authority to take it, and of the purposes for which it was taken."

The counsel for plaintiff seems to rely mainly upon *Heard* agt. *The City of Brooklyn* (60 *N. Y.*, 242), and *String* agt. *The City of Brooklyn* (68 *N. Y.*, 1). These two cases, so far as the question we are examining is concerned, were practically the same. The question involved was what estate a railroad corporation took in lands appropriated by it under its charter (*chap.* 256, *Laws of* 1832), and it was held to be an easement and not a fee. A reference to the case in the 60*th New York* does not show this question was discussed at all by the court. RAPALLO, J. writing the opinion, merely says: "By the proceedings for the acquisition of the lands in question, under the act incorporating the Brooklyn and Jamaica Railroad Company

(*Laws of* 1832, *chap.* 256), the company became entitled only to the use of the land for the purpose of operating its railroad ; the fee remained in the original owners, subject only to that use, and on the discontinuance of the use the owners were entitled to resume possession of the land."

In the 68*th New York*, FOLGER, J., writing the opinion upon the subject says : " The decision of this case in the 60*th New York* was put fairly upon the ground that whatever interest the railroad company had in the lands in suit *had ceased*, and *that on that cessation* the plaintiffs were entitled to resume possession, that the fee remained in the plaintiffs, and that the right of the railroad was a right to use for the purpose of operating its road and no more. The appellant here strives to make out that the lands were not taken for a mere right of way or other easement, but that there was an appropriation of the lands ; an examination of the charter shows that the railroad company was authorized to appropriate the lands, *but only for its own use*, for the purpose contemplated by the charter. That purpose was to maintain and continue a railroad for fifty years over a designated route. All the legal proceedings for the taking of the lands show that such was the appropriation made, and that *the damages were assessed for such an appropriation.* The right of appropriation was given and exercised, but it was only for a use, limited in time and in kind or purpose. Having held before in this case that the purpose and use for which the appropriation was made, and for which the damages were assessed and paid, *had ceased by the acts of the railroad company*, we will adhere to that decision until reason for change is shown in a new state of facts."

Referring to the act incorporating the railroad corporations in these two cases (*chapter* 256 *of Laws of* 1832), we find it provided by section 16 that in case the corporation should not be able to acquire the title to the lands by purchase or voluntary session, it should be lawful for it to appropriate so much of the lands as should be necessary to its own use for the purposes contemplated in this act ; by section 17 it should present to the

Beal agt. N. Y. C.· and H. R. R. Co.

vice-chancellor a petition, among others things praying for the appointment of appraisers to *assess the damages* which the owners would sustain by reason of the appropriation thereof by the corporation to its own use; by section 19 the vice-chancellor· should appoint three disinterested freeholders for the purpose of assessing *such damages;* by section 20 the appraisers should proceed by viewing the lands, and by such other evidence as the parties might produce before them to ascertain and assess. *the damages* which the owners would sustain by an appropriation of their lands· for the use or accommodation of such railroad ·or its appendages; by section 21 the appraisers should make a report to the vice-chancellor, among other things specifying *the damages* which the owners would sustain by reason of the appropriation of their lands for the purposes aforesaid, and the vice-chancellor might modify the assessment as should appear just; by section 22, on payment of the damages thus assessed, with the · expenses of assessment, or depositing same in bank directed by vice-chancellor, the corporation should immediately become entitled to the *use of the lands* for the purposes aforesaid.

These provisions of the charter would seem to leave no doubt. but a mere easement was given the corporation by this act. The counsel for plaintiff here claims this charter and the charter of the Utica and Schenectady Railroad Company (*chapter* 294, *Laws of* 1833) are substantially alike. If they were, I should have no difficulty in holding the plaintiff never parted with the · fee in the premises in question.

By the charter we have here to interpret, it was provided the corporation might *purchase and receive donation of, and hold* such real estate as was necessary or convenient, *and it should* *be lawful for it to enter upon, take possession of and use* all such lands as might be *indispensable* for the construction and maintenance of the road, *but* all lands which were not *donations* should be *purchased*, and at a price to be mutually agreed on, and in case of a disagreement as to *price*, application might be made to the court of chancery, and persons should be appointed to appraise.·

the lands (not the damages for the use of them) and the appraisers should award to the owners what they should deem to be the full *value* of the *lands* and upon payment of this appraisal (the full value of the lands) and all expenses of the appraisal, the decree or order should be made.

So far it seems to me every word of the charter points to the acquiring of the fee in the lands, and not an easement merely. It is said the corporation may have the land, but it must *purchase* it if not *donated*, and it must *pay* on such *purchase a price to be agreed on*, and only in case of *disagreement as to price* are appraisers to be called in, and then they are to appraise the lands and to award to the owner the *full value thereof.* Upon payment of the full value, practically the price fixed by the appraisers on account of the inability to agree on the price to be paid upon a purchase, was it not intended the corporation should acquire the fee to the property? Any other construction, it seems to me, would be unjust and unreasonable. The only difficulty, if any, in assenting to this construction, arises from the remaining provision in regard to the matter, viz., when the decree or order should be recorded the corporation should be possessed of the lands for the purposes of the road, *and might enter upon, take possession of, and use them.*

This language, standing alone and not read in connection with the provisions heretofore referred to, would not seem to imply the interest acquired was a fee or anything further than an easement for railroad purposes. I think, however, when this language is read with that before it, the whole is consistent and implies a *fee*, and not a *mere easement*, was intended by the charter to be acquired. It will be seen the provision at first was that it should be lawful for the corporation to *take possession of* and *use* all lands that were *indispensable*. This language has, however, connected with it a "but" condition, which must first be complied with before the corporation could so take possession of and use the lands. This condition was a purchase at a price, and the statute then goes on to provide for fixing the price at which the purchase could be made. And finally, hav-

ing made provisions for all the conditions, the *but* in connection with its first statement that the corporation might enter upon and use the lands in compliance with all the provisions, it is finally again, in substantially the same language, provided that the corporation might take possession of and use the lands.

. I am unable to perceive how the cases relied upon by plaintiff's counsel afford us any precedent for the construction of the charter we are here considering, and I am unable to arrive at any other conclusion but the one favorable to the defendant in this question, that the corporation acquired a *fee* and *not a mere easement*, in the premises in question, under and by virtue of the decree or order of the court of chancery.

The case cited and discussed by counsel upon both sides of this case (*Terry* agt. *The New York Central and Hudson River Railroad Co.*, 67 *How. Pr.*, 439), was in many respects entirely like the one we are here considering. It was unlike this case, however, in that the railroad corporation which originally appropriated the lands in suit, the Tonawanda Railroad Company, had a charter entirely unlike the charter of the Utica and Schenectady Railroad Company, and one under which an easement, and not the fee, was clearly acquired (*see chap.* 241, *Laws of* 1832). It was a charter containing the same identical provisions as to the acquisition of lands as those in chapter 256 of laws of 1832, which are heretofore given in considering the cases in the 60*th* and 68*th New York.* This case was tried at the Genesee circuit in September, 1884, and, so far as I am aware, the decision there made has never been reversed, overruled or criticised. It was against this same defendant, and judge HAIGHT held the plaintiff to be the owner in fee of the lands in suit, but subject to a public use for railroad purposes, and the time such use should continue was within the discretion of the legislature and not confined to the fifty years, which was the term of existence of the corporation that acquired the lands prescribed in its charter; that such use had not as yet ceased and determined, and therefore the plaintiff could not recover.

It seems to me the counsel for the plaintiff at the argument of our case, did not appreciate the ground upon which judge HAIGHT came to his conclusion in that case. His position was, not that the lands were originally appropriated for fifty years and no more, and yet the legislature might, without the consent of the owner of the lands, extend this fifty years to five hundred years; such a position would hardly be tenable. He says: "The corporation was at first created for the term of fifty years. The legislature, however, reserved to itself by section 30 the right at any time to alter, modify or repeal the act; it had thus the power to shorten or extend the time that the corporation should exist. The legislature has seen fit to extend its corporate term for the period of 500 years; if, therefore, the lands were taken under this act for the life-time of the corporation, subject to the power of the legislature to shorten, discontinue or extend such corporate life, then I fail to see how the plaintiff can recover. In determining this question the act must be determined by reading the various sections in connection with each other. Section 1 creates the corporation for fifty years, but by section 30 the time may be lengthened, shortened or the corporation at any time discontinued; so that it is the same as if section 1 read that the corporation, and for the term of fifty years from the passage of this act, or such other time as the legislature shall provide, shall continue to be a body corporate and politic. Section 16, in giving authority to acquire and appropriate lands, provides that it may do so for the purposes contemplated by the act; and section 22, in providing that the railroad company may take possession of the land after the payment of the damages as appraised, provides that it shall be entitled to the use of the said lands for the purposes aforesaid."

If I may be permitted to add to this argument in the same direction judge HAIGHT has taken, I should say: The sections providing for the acquisition of lands did not provide such use should be for fifty years and no more; *time* was not designated at all in these sections, but only the *purpose*, that of maintain-

Beal agt. N. Y. C. and H. R. R. Co.

ing a railroad. It is claimed to be inferred such acquisition was only fifty years because the life of the corporation was only fifty years. The act, however, reserved to the legislature the right to, and it might extend the life of the corporation in carrying out the purpose of maintaining a railroad. When, therefore, the lands were acquired and damages appraised and paid to the owners, all parties knew and understood the acquisition of the lands under the charter was for no certain, definite time but was for a purpose, a public use, and the time the user of the lands should continue for such purpose was discretionary with, and might be determined by the legislature. In this view of the matter, no rights of the property owners would be interfered with or invaded by the legislature, and at the same time a very satisfactory principle would be maintained that where property has been taken for public use, so long as that public use is continued, with the concurrence of the legislature, the land should not revert to the original owner.

This decision of judge HAIGHT is authority for the proposition urged by defendant here, that assuming the plaintiff never to have been deprived of the fee in the premises in suit and still to be such owner, yet such ownership is subject to public use by defendants for railroad purposes which use has not ceased or determined, and therefore she is not entitled to the possession of the property and cannot maintain this action.

In the 60*th* and 68*th New York* the reason why the lands were held to have reverted to the original owners, was not that the existence of the corporate life had terminated, but the lands had ceased to be used for the purpose of maintaining a railroad, had been abandoned for such purposes.

My conclusion is that the plaintiff cannot maintain this action, and the defendant is entitled to judgment dismissing her complaint, with costs.

Formal findings may be argreed upon between parties in accordance with the suggestions in this opinion, and presented for signature. If not agreed upon I will settle same.