9 533
52 400

# CHARLESTOWN.

## WALKER *v.* SUMMERS ET AL.

### September 11, 1876.

1876.
August Term.

1. It is not in the power of the grantor of land in a deed of trust to secure the payment of money, (which is in fact purchase money which he owes on the land), and which deed of trust is duly recorded, to dedicate the streets and alleys laid off by him on the land conveyed in trust to the public use, so as to destroy or release the trust lien of the *cestui que trust* thereon, or estop him from the assertion thereof, without the concurrence of the *cestui que trust* clearly established.

2. Where it is manifest from the whole case that there is, in fact, no well grounded dispute as to the credits to which a party is entitled, upon a debt secured by deed of trust on land, and the balance due on the debt after deducting such credits is clear, it is not error in the court to ascertain and fix such amount in its order or decree, dissolving an injunction enjoining a sale by the trustee under such deed of trust, without first referring the cause to a commissioner to ascertain and report the amount due and unpaid upon such debt.

Appeal from a decree of the circuit court of Kanawha county, rendered on the 15th day of August, 1874, in a chancery cause pending, at rules in the clerk's office of said court, in which J. Brisben Walker, was complainant, and Lewis Summers, and others, defendants.

The facts fully appear, in the opinion of the Court.

Hon. Joseph Smith, judge of said circuit court, presided at the hearing below.

*W. A. Quarrier* for Walker, the appellant.

*W. H. Hogeman* for appellees.

1876.
August Term.

Walker
v.
Summers.

HAYMOND, President.

This is a bill with injunction granted thereon, filed in the circuit court of Kanawha county, in July, 1874. It alleges, substantially, that on the tenth day of February, 1871, the defendant, Lewis Summers, and Lucy W., his wife, conveyed to plaintiff, a tract of land in said county, situate on Kanawha river, immediately below the city, of Charleston, and containing 160 acres ; that on the same day, plaintiff conveyed the said tract of land to W. Sydney Laidley in trust, to secure said Summers the deferred instalments of purchase money due upon said land, to-wit: $1,974, due first of January, 1872 ; $2,220, due first of January, 1873 ; $2,220, due first of January, 1874 ; $7,400, due first of January, 1874 ; $7,400, due first of January, 1875 ; $7,400, due first of January, 1876 ; $7,-400, due first of January, 1877 ; and $7,400, due first of January, 1878 ; that of these instalments, defendant paid in full the first three, and has made large payments on the instalment of $7,400, due first of January, 1874 ; that plaintiff had theretofore purchased a tract of land immediately above the Summers' tract, from James L. Carr, and another tract immediately below the Summers' tract, from Holly Hunt, and that thereafter, plaintiff, in conjunction with N. J. Bigley, purchased from Alethia Brigham, another tract of land, lying east of, and adjoining the Carr tract; that the two first named tracts of land were purchased by plaintiff, and the last by him and Bigley jointly, for the purpose of laying off said land into lots, streets and alleys, and as an addition to, and part of, the city of Charleston ; that the land was accordingly laid off as aforesaid, and a map thereof is filed as part of the bill marked exhibit No. 3; that, that part of the lands laid off on the map above Elk river, is the old town of Charleston, and the portion below Elk river, is the land purchased as aforesaid, from Carr, Summers, Hunt and Brigham, and is commonly known and called the West End ; that the streets, alleys, and lots in the

West End, are laid off, with a view to a regular and continuous plan; that said map of the West End was carefully laid off and planned by competent and skilful engineers, and carefully identified on the ground itself, and that plaintiff had the same recorded in the office of the Recorder of Kanawha county; that he has expended a large amount of energy, skill and money in advertising the lots in West End, and in inducing persons to buy said lots and build houses on the same; that plaintiff has sold some two hundred of said lots, and there has been built upon said lots, about seventy-five houses; a portion of these houses and lots are situate on the Carr tract, a portion on the Summers tract, and a portion of the houses on the Hunt tract; that all the lots so sold, were sold in strict conformity to the map aforesaid, and to the streets and alleys as laid down in said map. That on the twenty-eighth of December, 1871, plaintiff sold to, and conveyed to, said Summers, lots Nos. 11, 12, 13, 14, 15 and 16, in square eleven in said plat of West End. A copy of the deed is filed. Plaintiff further states, " that by reference to the said deed, it will be seen that said Summers has recognized and approved the map, Exhibit 3, and the streets and alleys as laid down on said map, and particularly Randolph street and Ohio Avenue; the two first named streets extend through the Summers tract of land. Plaintiff further alleges, that the trustee, W. Sidney Laidley, together with his law-partner, W. H. Hogeman, has purchased two lots situate in the West End, and he files a deed from him to them therefor, and also, a deed from H. S. Walker, to said Laidley and Hogeman. And the Plaintiff says, " by which deeds it will also be seen that the trustee, W. Sidney Laidley, also recognized the map aforesaid, and the streets and alleys aforesaid. He also alleges, that by the action of said Summers, and the trustee, Laidley, the contract contained in the said deed of trust, has been modified and changed, and the dedication of the streets, avenues and alleys, in the said map contained, to the public, has been

1874.
August Term,

Walker
v.
Summers.

approved and confirmed by the said Summers and Laidley, and that in all sales made under the deed of trust, said streets and alleys must be recognized and exempted from such sale, and as a necessary consequence, the sale must be by lots, according to the plat, and not in gross; that to sell said land in gross, would do plaintiff infinite damage, and that said Summers cannot lose anything by selling the lots, as lots; that there are on the Summers property, nine hundred and sixty lots, of which there have been nineteen lots sold, at an average of $263. each; that he, (plaintiff,) would have been able to have sold a sufficient number of said lots to have met the payment of the instalments of the purchase money, as they fell due, but for the refusal of said Summers to release the lien for the purchase money to the lots, as he, (plaintiff,) sold the same, although plaintiff offered to allow the defendant to receive all the purchase money from the purchasers, and hold and collect the same, and apply it to the purchase money due from the plaintiff; that there is a persistent effort on the part of said Summers, unnecessarily to oppress and injure plaintiff, and that Summers is not seeking so much to collect his debt, but he is endeavoring to get back the land for a small price. Plaintiff further alleges, that the amount due from him on the two notes, falling due first January, 1874, has never been settled and adjusted, between complainant, and the defendant, Summers; that a dispute has arisen between them, growing out of the fact that a large payment was made in lumber, and Summers has failed to give credit for the full quantity of lumber delivered; that notwithstanding the promises on the first of June, 1874, the said Summers directed said trustee to advertise the land to be sold on the 8th of July, 1874, and files a copy of the notice of sale, and says, " By reference to the notice of the sale, it will be seen that the notice recites that the deed was executed to secure the ' payment of certain notes therein mentioned to Louis Summers, and default having been made in the payment thereof, &c.' Plaintiff

also alleges, that the trustee has fallen into a serious error, and one very prejudicial to plaintiff, for no default has been made in the first two notes, which have been paid; no default has been made in the last four notes, because they never have been due; that payments have been made on the two notes due the first of January, 1874, sufficient to discharge the small note, and greatly diminish the large one; that the conduct of the trustee is also illegal and oppressive, in offering the land for sale "in lots and by the acre;" that after the modification of the trust deed by Summers and the trustee, the land could only be sold as laid off on the map, forty feet front, by one hundred and twenty deep, and forty-five by one hundred and twenty feet, and not in lots that contained an acre or more. Plaintiff makes said Summers, and Laidley, and John Walker, and Vinton Goddard, and no others, defendants to the bill, and he prays that said Summers and Laidley, be restrained and enjoined from selling the land in the bill mentioned, until the further order of the Court; that the trustee be perpetually enjoined from selling, to pay the two first notes; that he be enjoined from selling for the last four notes, until they fall due; that he be enjoined from selling for the two notes falling due the first of January, 1874, until the true balance is ascertained; that an account be taken between the parties, to ascertain the true balance; that the trustee be required to sell the lots as laid down in the said map, and not in gross or by the acre; that the avenues, streets and alleys, in said map, be exempted from sale, &c.

At August rules, 1874, the defendant, Summers, filed his answer to the bill, which, at its commencement, contains a demurrer to the bill with special assignment of causes of demurrer, which it is not necessary here to notice. In his answer, Summers admits the sale and conveyance of the tract in the bill mentioned, the price, the execution of the notes, and deed of trust on the land to secure the payment thereof, as in the bill alleged;

68

and he alleges that at the time of the sale of the land, it was a farm and was well cultivated as. a farm, with its fields, fences, gates, &c.; that after said sale, and as the several notes fell due, plaintiff failed to pay the same; and, on pretext that he was unable for want of funds, delayed and annoyed him about the collection thereof; that finally, however, he succeeded in obtaining payment of said notes, except the note of $7,400, due January 1, 1874; that such payment was not always in cash; that on one occasion, he was compelled to take real estate, and on another occasion, he surrendered a portion of one of said notes, and released his lien to that extent under said trust deed, and in lieu thereof, took a negotiable note of plaintiff's, which at maturity, was dishonored for non-payment; that on this note, which was for a large amount, plaintiff afterwards confessed a judgment, but this judgment is still unpaid; that there is due from plaintiff to him on the note for $7,400, payable the first day of January, 1874, the sum of $6,875.69, as shown by statement filed with the answer marked (A), after deducting all payments made by plaintiff to be applied as credits on said note, and which constitute credits thereon. He admits that on the first of June, 1874, he directed the trustee to advertise and sell the land in said trust deed described, in accordance with the terms thereof, to satisfy the balance due on the said note; that in doing this he was not prompted by a desire to obtain the property at a low price for the purpose of speculating thereon; that he had only in view the speediest way of collecting the large amount due him by plaintiff, the payment whereof had long been delayed by promises, repeatedly made by plaintiff, that, at given times, he would pay, but none of which he fulfilled. He further says. that plaintiff's allegations, respecting the purchase by plaintiff of the several farms below Elk river, in what is called " West End," and the laying off of the same with avenues, streets, alleys and lots, and the making and recordation of the plats, are untrue; that said farms were

not purchased at the same time, but at different times, to-wit: That James L. Carr sold to plaintiff and one Playford, in June, 1870, and subsequently Playford sold to plaintiff; in October, 1870, Holly Hunt conveyed to complainant; in February, 1871, he, (Summers,) sold to plaintiff, and in March, 1873, Mrs. Brigham sold to plaintiff and one Bigley; that exhibit 3, filed with plaintiff's bill, was not made until 1873, as appears on its face, and is not, and never has been, of record in the office of the clerk of the county court of Kanawha county, or of the office of the recorder of said county, nor has any copy of exhibit No. 3 been recorded in either of said offices; that James L. Carr, in May, 1867, laid off on Elk river, a tier of lots running from the suspension bridge to the Kanawha river, with a street on the bank of Elk river, and one a short distance back from the river and parallel therewith, which street is now called Pennsylvania avenue; that he made a map of such lots, which is recorded in the office of the clerk of the county court of Kanawha; that on May 7, 1871, a map of the Carr farm was made at the instance of plaintiff and recorded in the proper office. This included 34 squares, from Pennsylvania avenue to Delaware, as laid down on said exhibit No. 3, but did not extend further; that this is the only map recorded of West End; that there is no map of record showing any sub-division into lots, avenues, streets, and alleys of the land conveyed by him, (Summers,) to plaintiff; that he, (Summers,) denies that he ever modified the terms of said trust deed, so as to require a sale of the land therein described in accordance with the alleged sub-division thereof laid down in exhibit No. 3, or that he ever recognized or approved of such sub-division, or any plat thereof; that he admits the conveyance to him by plaintiff of certain lots which were described with reference to a certain map, but that each, and all of them were on the " Carr farm," and not on the land described in said trust deed, or any part thereof; that the map to which the said conveyance referred, was

not exhibit No. 3, or any copy thereof, but the map showing the land between Delaware avenue and Elk river before described; that he, (Summers,) knows nothing of the purchase by Laidley and Hogeman of certain lots in West End. He, (Summers,) admits that he declined to release the lien of the said trust deed on the land therein described, when requested by the plaintiff, for the reason that plaintiff had not paid the several notes in the trust deed mentioned, or offered to pay them. He denies that he persistently informed the public that plaintiff could not make title to the lots he was offering for sale. He denies that it is uncertain what amount is due on the note for $7,400 aforesaid, or that there is any dispute respecting the amount. He also says that he owns an unsatisfied judgment against plaintiff, very much larger in amount that the whole of the alleged lumber account as claimed by complainant; that this lumber account, by express agreement between plaintiff and him, was to go as a credit on this judgment. He admits that the trustee gave the notice to sell, &c. He also denies that said property, in the deed of trust described, has, in fact, been cut up into a town, &c.

At August Rules, 1874, Laidley, the trustee, filed his answer, in which he admits the deed of trust made to him upon the land therein described, for the purpose in the bill mentioned; and that he, in pursuance of the directions of defendant, (Summers,) advertised the sale to pay the purchase money due on the land on the eighth day of July, 1874, in which notice of sale he fixed the time, place, and terms, &c., as stated in the notice, which is · exhibited with the bill. He denies that there is anything in his conduct as trustee, "illegal or oppressive." · He also denies that the contract contained in the trust deed has been modified by any act of his. He says he purchased a lot from plaintiff, on Pennsylvania avenue, but before any map was recorded, except the map of J. L. Carr, and subsequently purchased lots on the Carr farm, but that there is no record of any map extending

the streets on to the Summers property. He also avers that plaintiff does not deal fairly with the trustee, in his allegations and charges of abuse of his trust, for the intention and object of the trustee was well understood by plaintiff, before the notice of sale was advertised; that plaintiff was shown the advertisement, and the sentence offering the property by lots, was inserted at his request, and that the trustee informed the plaintiff that he would sell such of the property advertised as he (the plaintiff) might designate, or any other property that he might wish sold. He also avers that the allegations in regard to an unsettled account between the plaintiff and defendant, Summers, is not true; that he (Laidley) is well informed as to all the transactions stated in defendant's (Summers) answer, in regard to the lumber, and knows the statements therein made to be true, and the payments made by plaintiff, since the first of January, 1874, were all made, directly or indirectly, through him, except the credits made by notes, and all said credits are endorsed upon said notes, and that plaintiff never intended that the account for lumber should be credited upon said notes, for he well knew that plaintiff had contracted with Summers to have the lumber credited upon the judgment, confessed by his attorney-in-fact, W. A. Quarrier, in open court, &c.

Sundry depositions were taken by the parties, and filed, and afterwards, at a circuit court, held in vacation, on the fifteenth day of August, 1874, in said county, the cause was heard, on a motion to dissolve the injunction awarded in the cause, upon the bill, exhibits, order of injunction, the demurrer and answers of Summers and Laidley, trustee, exhibits filed therewith, and general replications filed thereto, and upon the several depositions taken and filed by the respective parties, including the exhibits referred to in, and accompanying the same, and upon the statements filed by complainant, marked, Statements Nos. 2 and 3, and upon a motion made by plaintiff that a preemptory injunction should be granted him, as prayed in

the bill, to restrain any sale of the trust property until the sum due should be ascertained. And the court, by its decree, dissolved the injunction granted in the cause, and authorized the said trustee to proceed to enforce the said trust deed by a sale of the trust property, or so much thereof as should be necessary for the purpose, to pay the costs of sale, and the sum of $6,875.69, the amount due thereon, on the eighth day of July, 1874. And the court further recited and provided in said decree, that, "inasmuch as the plaintiff desires that the sale of the trust property, under the trust deed, should be made by lots, with reference to a plat, and subdivision thereof, filed with, and referred to, in the deposition of Joel S. Quarrier, and the judge, deeming such request proper, to the extent to which a sale of the trust property may become necessary to pay the costs of the said sale, and the sum aforesaid, provided the plaintiff complies with the terms hereinafter stated; now, therefore, after objection by the defendant, (Summers), it is further adjudged, ordered, and decreed, that if the plaintiff, within twenty days from the entry of this order, enter into bond, in the penalty of $20,000, with good personal security, to be approved by the clerk of the court, which bond is to be filed within the time aforesaid, and which is to be conditioned that the residue of the property, described in the trust deed aforesaid, which remains after a sale of such portion as may be sold to pay off the debt now due, and costs aforesaid, shall be ample security, and realize enough at public sale under such trust deed to pay off and discharge the whole amount which is received by such trust deed, and which remains unpaid at the time of any sale under such trust deed, or the obligors in such bond will make good, and pay up the deficiency, then the trustee shall sell so much of the trust property as may be necessary for that purpose, in lots, with reference to the plat and subdivision aforesaid; the lots so sold to adjoin each other, separated from each other, only, where streets exist in such subdivision, and to be selected from

one of the exterior boundaries of the trust property; but the trustee shall not sell any but whole lots. But, in the event no such bond is filed, as herein provided for, then the trustee may sell, by lots, or otherwise, as he may deem for the best interest of the parties. If the plaintiff, within ten days from the entry of this order, doth, by writing filed, within that time, with the clerk of the court, designate from which one of the exterior boundaries of the trust property he desires the lot to be sold to be selected, the trustee shall sell lots on the boundary so selected, but if no such selection is made in the manner aforesaid, and within the time aforesaid, by the plaintiff, then the trustee may designate the portion of the trust property to be sold. And it is also ordered that the preemptory injunction, this day asked for by the plaintiff, for the purpose of ascertaining the amount due the defendant Summers, be denied."

This cause is now brought before us by appeal from, and *supersedeas*, to said order, or decree, dissolving said injunction, &c.

As already stated, a number of depositions have been taken, and filed. The exceptions filed are immaterial to be considered, under the view I have taken of this case.

Where there has been no public use of a street, the owner may dedicate his land to the public, for such use, by acts and declarations, without a deed. But in such case, these acts and declarations must be deliberate, unequivocal and decided, manifesting a positive and unmistakable intention to permanently abandon his property to such public use. *Z. M. Pierpoint v. the Town of Harrisville*, decided at Wheeling, July 1876, and authorities cited in the opinion of the court.

It appears by the evidence of Joel S. Quarrier, clerk of the county court of Kanawha county, that the map, Exhibit No. 3, filed by plaintiff with his bill, has never been recorded in the clerk's office of the county court of

Kanawha county. The only evidence in the cause filed by plaintiff, to show that defendant Summers should be held bound by the map of town lots, streets, avenues, alleys, &c., is the deed from plaintiff and his wife, dated twenty-eighth of December, 1871, to defendant (Summers) for " a certain lot of land situate, lying, and being in the said county of Kanawha, on the lower side of Elk river, and, in the addition to the city of Charleston, laid out by said J. Brisben Walker, and being lots No. eleven (11), No. twelve (12), No. thirteen (13), No. fourteen (14), No. fifteen (15), and No. sixteen (16), in square No eleven (11), in the plat and survey of said addition recorded in the recorder's office of Kanawha county, in book 26, page 354. The said lots herein conveyed, fronting on Ohio avenue two hundred and fifty feet, and lying between Randolph street and Wyoming street, and running back one hundred and twenty (120) feet to an alley." This deed was acknowledged on the day of its date, and recorded on the eighth of March, 1872.

The defendant, (Summers,) admits that he purchased these lots of plaintiff, but he avers, and the evidence in the cause clearly shows, that neither of the lots, described in said deed, constitutes any part of the land sold by him to plaintiff, and embraced in said deed of trust; that these lots are a part of another, and distinct tract of land, purchased by plaintiff and one Playford, from J. L. Carr. The fact that Summers purchased the above named lots upon the Carr tract of land is not sufficient evidence to establish the alleged fact, that Summers had recognized and consented, that plaintiff should lay off the land, described in said trust deed, into town lots, streets, avenues and alleys, as alleged in the bill, and shown by said exhibit No. 3, therewith filed; and that he would be bound thereby in having said deed of trust executed by a sale, or sales, to pay any part of his purchase money; and it cannot, and should not be inferred, from the fact that said Summers purchased said lots, that he thereby consented to any change of the contract contained in the

1876.
August Term.

Walker
v.
Summers.

deed of trust. Instead of Summers ever recognizing said plat or map of town lots, &c., alleged to be laid out on the land sold by him to the plaintiff, with intent to be bound thereby, or, to consent thereto, so as, in any way, to effect his rights under the said deed of trust, the contrary appears to be the fact. He refused to release his lien on any part of the land, or, to take or agree to take, purchase money notes for any lots on the land sold by him to plaintiff. Indeed, it is clear from the whole case, that Summers was careful to avoid doing any act, which could, justly, be construed into evidence or proof, that he had, or intended, to relinquish, release, or in anywise change, or modify, any of his rights under the deed of trust in any respect. It does not appear that the trustee, Laidley, purchased any lots which constitute any part of the tract, or farm, conveyed to him, in trust, to secure Summers in the payment of his purchase money. The lots which he purchased were also of the Carr tract.

I do not feel satisfied that the trustee could have prejudiced the rights and liens of the *cestui que trust*, by any recognition of the acts of Walker, in laying off the land embraced by the deed of trust, without the concurrence of the *cestui que trust*. As trustee, he had no power or authority, to change or modify the contract contained in the deed of trust. But it is unnecessary to determine this question, as it does not appear that the trustee did any act, from which it could rightfully, or justly be inferred, that he did recognize the acts of Walker in laying off the said Summers' farm into town lots, streets, &c., or concur therein, or agree thereto. It was not in the power of Walker, the grantor, to dedicate the streets and alleys laid off by him on the Summers tract, to the public use, so as to destroy, or release the trust lien of the *cestui que trust* thereon, or estop him from the assertion thereof, without his concurrence clearly established. This has not been done in this case.

It is manifest from the evidence in the cause, that it was not error to dissolve the injunction awarded, with-

69

out first referring the cause to a commissioner to ascertain the amount due and unpaid on the $7,400 note, which became payable on the first day of January, 1874. The evidence clearly shows that all the credits, to which Walker was entitled upon said note, were given him, and that the true balance, after deducting all just and proper credits due on said note, was $6,875.69, on the eighth day of July, 1874. Upon this subject, there is no conflict whatever, in the evidence. The credits to which Walker were entitled, upon said note, and the balance unpaid, and due on the note, being so manifest, as not to admit of controversy or doubt, it was not error to fix the amount due, and dissolve the injunction without a reference to a commissioner. A reference in such case, would only be productive of unnecessary delay and costs.

The plaintiff alleges that he has sold some nineteen lots on the Summers land, but he fails to allege to whom the sales were made, or whether he has received payment in whole or part, and, in fact, he makes no allegations in reference thereto, except, he does state the average price at which he sold. He fails to make the alleged purchasers, parties to the bill, and to allege that the trustee is about to, or will, sell these lots. In fact, it is fairly inferrable from the allegations of the bill, that plaintiff does not expect or anticipate a sale of these lots. He does not pray that other lots or portions of said land be sold under said trust deed, to pay the note due, before the lots he has sold; nor does he allege the time, or times, at which he made sale of said lots, or either of them. But the court, in its order of dissolution, does direct that if the plaintiff, with ten days from the entry of the order, shall designate in writing, filed within that time with the clerk, from which one of the exterior boundaries of the trust property he desires the lots, to be sold, to be selected; the trustee shall sell lots on the boundary so selected. This is ample protection to the plaintiff against the sale of said nineteen lots, at the an-

ticipated trust sale, until the unsold land is first exhausted, if he desires such protection.

But the burden of the plaintiff's bill, is to prevent the sale of the streets, alleys, and avenues, laid out by him on the Summers land, which, he alleges, he dedicated to the public use, as indicated on said map, filed as exhibit No. 3, and as to which, he claims the contract of the deed of trust was changed, and the lien of the deed of trust, released. Under the allegations of the bill, and the evidence, it would not have been error to have dissolved the injunction, without giving the plaintiff the privileges provided in the order of dissolution. These privileges, under the pleadings and evidence, are mere favors extended in the order to the plaintiff, which are in no wise to his prejudice, but were given for his benefit, and if they are prejudicial to any person, it is defendant; (Summers) but he makes no complaint of them, but asks this Court to affirm the order of dissolution.

It does not appear from the pleadings and evidence, that there is no necessity for selling the streets, avenues, and alleys, or that the lots, as laid off by plaintiff, would probably sell for sufficient to pay the Summers debt due, and to become due, without the streets, &c. Summers has a deed of trust lien upon the whole land for his debt, in the deed of trust mentioned. Upon a proper case, made by proper parties, by the pleadings and evidence, the Court might properly direct, that the nineteen lots aforesaid, should not be sold under said deed of trust, until the residue of the land was first sold, and until it should become necessary. But under the views I have expressed, it is unnecessary to consider that subject further in this case, as now presented.

For the foregoing reasons, the said order dissolving the said injunction must be affirmed with costs, and $30 damages in favor of the appellees, (Summers and Laidley) and against the appellant, (J. Brisben Walker.)

The other Judges concurred.

DECREE AFFIRMED.