# CHARLESTON.

### A. W. Hicks v. City of Bluefield.

Submitted April 20, 1920.   Decided May 4, 1920.

1. Forcible Entry and Detainer—*Court May Direct a Verdict
   for Plaintiff on the Issue of Three Years' Possession.*

   The issue as to whether the remedy by unlawful entry and
   detainer is barred by three years possession, is one for jury
   determination; but, as to it, the court may direct a verdict for
   the plaintiff if the evidence of such possession is too slight
   to sustain a verdict based upon it.  (p. 369).

2. Same—*The Remedy is Open to an Owner of Realty Wrongfully
   Claimed by City as Street.*

   Unlawful entry and detainer may be invoked by an owner of
   real estate wrongfully claimed by a city as and for a street,
   and actually occupied and used by the public under the claim,
   authority and protection of the city.  (p. 370.)

3. Dedication—*To Establish Implied Dedication the Facts Must
   Clearly Show Owner's Intent,*

   To make out a case of dedication of private property to public
   use by implication, the facts relied upon to establish it must be
   of such character as clearly show the owner intended such ded-
   ication and they must be clearly and fully proved.  (p. 372).

4. Same—*Acceptance with Owner's Knowledge May Aid Weak
   Evidence; on Circumstantial Evidence Without Proof of Dedi-
   cation?  Verdict May be Directed for Plaintiff.*

   In such case, an acceptance of the property by the public au-
   thorities, as having been dedicated, with knowledge of the

owner, aids and strengthens weak evidence of dedication; but if, in an action against a city to recover property so claimed, occupied and withheld, the evidence of dedication is circumstantial and uncertain and there is no proof of an acceptance, before revocation of the supposed dedication, the trial court may properly direct a verdict for the plaintiff. (p. 372.)

(LYNCH, JUDGE, absent).

Error to Circuit Court, Mercer County.

Action of forcible entry and detainer by A. W. Hicks against the City of Bluefield. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Jno. R. Dillard* and *L. J. Holland,* for plaintiff in error.

*C. R. McNutt* and *Jno. R. Pendleton,* for defendant in error.

POFFENBARGER, JUDGE:

The plaintiff in this action of forcible and unlawful entry and detainer, in whose favor a verdict was found by direction of the court, has fully proven his title in fee to the strip of land, in which the defendant claims a public easement. This strip, only 30 feet wide and about 180 feet long, runs from one street to another and the whole thereof is claimed by the city as a street. The issues relate solely to the remedy invoked and dedication and acceptance of the easement.

Denial of the right to invoke the remedy is predicated, not upon inappropriateness thereof in a controversy between an owner of land and a municipal corporation claiming it as a highway or street, but upon the ground that the duration of the defendant's possession of the land in controversy precludes unlawful detainer and makes ejectment the proper remedy, by virtue of secs. 1 and 3 of ch. 89, making three years possession a bar to the former action. As to the duration of the city's alleged possession of the property, the evidence is conflicting. Though practically all of the strip has been open and used to some extent by the general public, the evidence adduced by the plaintiff is to the effect that such use was merely permissive and of the kind usually made of vacant or unoccupied lots. The witnesses deny that the city ever exercised any authority over it, or claimed any right in it, so far as they know, until after the

plaintiff fenced it up and excluded the public from the use thereof. A vendor of the plaintiff says he put a hitching pole or rack on one end of it, while he conducted a mercantile business in a building on an adjoining lot and so invited his customers and others to use it. On the other hand, the city's street commissioner swears he, at one time, graded down the upper side of it and maintained a crossing at one end of it, by means of stepping stones at first, and then by boards and, still later, by the use of cinders. This crossing was maintained along the side of Mercer Street and on the line between it and the end of the strip of land in controversy. He also claims to have done a little filling on the other end of the strip, at its junction with Peck Street, about five or six years before the date on which he testified, and that the debris from the strip has been hauled away by the trash-wagons of the city. Wagons and other vehicles have not only been parked or stored upon it but have used it much as they have used other streets. Testifying in rebuttal, a former owner denies that any grading was ever done by the city on the property and says he himself put in the stepping stones along Mercer Street and that, on one occasion, a city representative came there, with the intention of doing some grading, but left when he protested against it and denied the city's right in the property. Other witnesses so testifying, say the strip was never used as a public street and that, while vehicles did pass over it, they did it in the same way in which they frequently passed over other vacant lots. There is no proof of any permanent pavement or improvement of the strip, notwithstanding its location in an improved section of the city. The plaintiff obtained title to the property by a deed dated, January 26, 1918, and some time in May of the same year, to the best of his recollection, he built a post and wire fence at each end of the lot and the next day after this was done, the city's officers and agents tore down the fence. In this state of the evidence, it cannot be said, as matter of law, that the city's possession extended over a period of three years, nor that it had any actual possession at all, before it entered upon the land and tore down the fences. The actuality of a defendant's possession and the duration thereof are questions for jury determination, when there is conflict in the evidence. Code, ch. 9, sec. 3. But,

of course, it is governed by the same rules as other issues of fact.

A more serious question, however, is whether or not the remedy is appropriate,—whether either unlawful detainer or ejectment lies between the owner of porperty and a municipal corporation claiming it as a public street or highway. Under our law, unlawful entry and detainer is substantially the same, with few exceptions, as common law ejectment which does not necessarily go to the question of title. *Camden* v. *West Branch Lumber Co.,* 59 W. Va. 148, 158. The cases relating to the right of a corporation to maintain ejectment for possession of a street or highway against any person withholding it are collected in a note to *Canton Co.* v. *Baltimore,* 11 L. R. A. (N. S.,) 129. In Maryland, Kentucky, Georgia, Michigan, New York and Wisconsin, ejectment has been held not to be an appropriate or available remedy in such cases, unless the corporation owns the fee in the land. *Canton Co.* v. *Baltimore,* cited; *Covington* v. *Freking,* 8 Bush. 121; *Savannah* v. *Steam Boat Co..* R. M. Charlt. (Ga.) 342; *Grand Rapids* v. *Whittlesey,* 33 Mich. 109; *Southampton* v. *Betts,* 163 N. Y. 454; *Northern Turnp. Road Co.* v. *Smith,* 15 Barb. 355; *Racine* v. *Crotsenberg,* 61 Wis. 481. These decisions are based upon the theory that the city or corporation has only an easement in the land and the legal proposition that ejectment does not lie for recovery of an incorporeal right. On the other hand, there are other numerous cases in which, in view of the exclusiveness of the right of the city and its complete dominion over its streets or public grounds, it has been held that ejectment may be maintained against any person occupying any of them and withholding possession thereof. *San Francisco* v. *Grote,* 120 Cal. 59; *Visalia* v. *Jacobs,* 65 Cal. 434; *Southern P. Co.* v. *Burr,* 86 Cal. 483; *Eureka* v. *Armstrong,* 83 Cal. 623; *Eureka* v. *Fay,* 107 Cal. 166; *Napa* v. *Howland,* 87 Cal. 84; *Chicago* v. *Wright,* 69 Ill. 318; *Lee* v. *Harris,* 206 Ill. 428; *Dummer* v. *Den,* 20 N. J. L. 86; *Hoboken etc. Co.* v. *Hoboken,* 36 N. J. L. 540; *Price v. Plainfield,* 40 N. J. L. 608; *Weger* v. *Delran Twp.,* 61 N. J. L. 224; *Ocean Grove etc. Ass'n.* v. *Berthall,* 63 N. J. L. 312; *Hohokus Twp.* v. *Erie R. Co.,* 65 N. J. L. 353; *Asbury Park* v. *Hawxhurst,* 67 N. J. L. 582.

Inappropriateness of unlawful detainer and ejectment in cases in which the owner of the fee seeks relief against the exercise

of a mere easement giving the defendant nothing more than a right to use the property in common with the owner, such as a private way over land, is manifest. The owner has not been deprived of possession. He has use of the land for all purposes consistent with the enjoyment of the easement and not obstructive thereof. Such right of possession as the defendant or owner of the easement has is not exclusive in any sense. But, in the case of a public street or highway on or across the land, the possession of the corporation under whose right or claim the general public use it, is practically exclusive. It leaves in the owner of the fee no right of individual possession or use. Therefore, the courts generally affirm the right of the fee owner to sue in ejectment for recovery of land wrongfully withheld from him by a municipal corporation, for street purposes. *Le Blond* v. *Peshtigo,* 140 Wis., 306; 25 L. R. A. N. S. 511; *Lowe* v. *Kaukanua,* 70 Wis., 306; *Mahon* v. *San Rafael Turnp. Road Co.,* 49 Cal. 269; *Tuller* v. *Detroit,* 97 Mich. 597; *Armstrong* v. *St. Louis,* 69 Mo. 309; *McCarthy* v. *Clark Co.,* 101 Mo. 179; *Strong* v. *Brooklyn,* 68 N. Y. 1. Right to this remedy under such circumstances has been denied in two cases at least. *Cowenhover* v. *Brooklyn,* 38 Barb. (N. Y.) 9; *Lynch* v. *Rutland,* 66 Vt., 570. They say the public easement is not incompatible with the owner's title or possession, for, owning the fee, he is in possession subject to the public right. In other words, the public use neither disseizes nor ousts him, wherefore he must resort to equity for relief by injunction. In *Strong* v. *Brooklyn,* however, the court, distinguishing *Cowenhover* v. *Brooklyn,* said: "Now, if the city had reduced its claim of title to actual possession, would it not exclude any present individual possession by the plaintiffs? They might use the lands for passage over them, as members of the public, but could have no personal or protracted right in them, so long as the city kept a possession as extensive as the claim." In our opinion, both reason and the weight of authority make it available to the owner of the fee against a city or other municipal corporation holding the land for street or road purposes. Though he may have a sort of technical possession, he has none in point of fact and his right is not an easement. He is the owner of land the possession of which is actually withheld from him in a very substantial sense.

His use of it, as one of the public, is not possession. It is used under the State's alleged right of exclusive possession conferred upon the corporation for administrative purposes. The corporation has and holds the actual possession, and, if it is wrongful, the owner should have a possessory remedy.

The lot in controversy is a part of a two acre tract conveyed to Jesse H. Woodrum by Joseph Davidson and wife by a deed dated, January 23, 1888. Woodrum conveyed one acre of it to Barbee, Tierney and Peck, who later conveyed one-third of it to Levering and he conveyed it to J. A. B. Bruce and F. A. Bolin. They together with Straley and Karnes divided the acre into lots and sold them. Bolin and Bruce bought one of the lots adjoining the strip of land in controversy and fronting on Mercer Street. On this lot, they erected a building in which Bruce resided for many years and in which they carried on a mercantile business. The lot line did not run at right angles with Mercer Street, but they erected their building at right angles therewith, wherefore the front of it came to the line of their lot, and the rear did not. Along the south side of the building, they put up and maintained a porch which extended beyond their line and over the northeast corner of the land in controversy. This porch extended back to an opening in the building giving access to a portion thereof used in the sale of groceries. It, as well as the vacant ground, was used in supplying their store with groceries and goods and their customers were permitted to use it. They say they occupied the land in controversy by such and other similar means, with the consent of their cotenants, Straley and Karnes. In their division of the acre into lots, they ran a ten foot alley entirely through it and between lots fronting on Mercer Street and lots fronting on Peck Street, the south end of which had no outlet, unless the thirty foot strip was intended for a street. It ended at the line of another one acre tract which Woodrum had conveyed to P. H. Rorer. West of this alley, fronting Peck Street and adjoining the land in controversy, there is another lot which was conveyed to one Robinett who erected a mercantile house on that corner, as well as a small tenement house in the rear thereof, the latter fronting on the thirty foot strip of land. The arrangement of his buildings indicates that he regarded it as a street. P. T.

Lilly purchased a lot out of the Rorer acre adjoining the thirty foot strip and fronting on Mercer Street. On it, he erected a three story brick building, with an opening and numerous windows on the north side, facing the land in controversy, as if it were a street. On a map of the City of Bluefield which seems to have been made in 1906, the land in controversy is laid down as an unnamed street, running northeast and southwest and connecting Mercer and Peck Streets. An effort is made to show it to be a continuation of Barger Street which opens into Peck Street, but it comes into Peck Street a little south of Barger. If extended, its northern line would probably coincide with the south line of Barger Street.

There is no proof of any express formal dedication of the land to street purposes or any other. If there was a plat made, designating it as a street, that fact has not been shown by evidence. The acre was divided into lots and sold and an alley laid out between them. The dedication of this alley is not denied, except in so far as it extends through this part of the land. Nevertheless, adjoining property owners seem to have built and improved their property under the impression that they owned corner lots. Bruce and Bolin themselves constructed their building as if they intended the rear or side opening to be upon a street. Although their shed or porch extended over the line, it is not uncommon for owners to build sheds over sidewalks, nor to lay down board sidewalks in front of their property. Robinett and Lilly built as if it were a street. None of these acts however, were done on behalf of the public. In favor of adjacent owners, the land might be subject to private easements, and yet not be a public street. *Cook* v. *Totten,* 49 W. Va.. 177. These acts of lot owners were only slightly probative, if at all, of dedication. After Bolin and Bruce bought the lot on which they built, their interests were to a certain extent adverse to those of Straley and Karnes. They could not dedicate so as to bind their cotenants. It is manifest, too, that no act of Robinett or Lilly would bind the owners of the land in controversy. Moreover, the conduct of the owners, in permitting the land to lie open, with knowledge of the impression under which Robinett, Lilly and Bolin and Bruce were acting, may have amounted to nothing more than a license to use the land in certain ways,

until it should be enclosed or devoted to some purpose incompatible with the licenses. If this slight evidence of dedication were aided by unequivocal acts of acceptance, it would be much stronger than it is. The two elements requisite to such title in a city as is claimed here, when proved, aid each other, if concurrent. If the owner knows, or is precluded from denial, that the city regarded his acts as dedicatory and so treated them, this circumstance casts light upon his intention. But there is no proof of any municipal act unequivocally signifying acceptance. What there is might possibly suffice, in a case in which the question of title is only collaterally involved, but it is not sufficient to prove title, when the direct issue is one of title. It was formerly held that an acceptance must be proved by matter of record. *Com.* v. *Kelly,* 8 Gratt. 632. This rule was relaxed by statute, so as to permit it to be established by proof of work done on a dedicated road by a road supervisor. *Talbott* v. *King,* 32 W. Va. 6; *Boyd* v. *Woolwine,* 40 W. Va. 282; *Dicken* v. *Liverpool S. & C. Co.,* 41 W. Va. 511. Mere use by the general public for a period short of ten years is not sufficient proof of a dedication and acceptance. *Yates* v. *West Grafton,* 33 W. Va. 507, 512. And then the proof must clearly show such facts, circumstances and conduct as make the intention of the owner to dedicate clear and unequivocal. An implied dedication must be clearly and fully proved. *Morlang* v. *City of Parkersburg,* 84 W. Va., 508, 100 S. E. 394. The evidence of it adduced here is not decisive in character. It is slight and uncertain and there is practically none indicative of acceptance. Clifford's grading, if any, must have been very slight. Nobody else seems to have had any knowledge of it, and it is not shown to have been done by authority of the city council. The city map was made by the city engineer and there is no proof that he was authorized to treat the strip in controversy as a street, or that his map was ever approved by the city council. Moreover, he does not call it a street. He merely delineates it upon the map as an open space.

In our opinion, the evidence adduced in support of the city's claim would not suffice to sustain a verdict in its favor, where-

fore we think the trial court properly directed a verdict for the, plaintiff. The judgment will be affirmed.

*Affirmed.*