# CHARLESTON.

WADE MILLER v. CITY OF BLUEFIELD.

Submitted October 5, 1920.　Decided October 12, 1920.

1. DEDICATION—*Intention Must be Unequivocally Manifested by Deed or Conduct.*

An owner of private property is not deemed in law to have dedicated it to public use, either by deed or by conduct, unless his intention so to do is deliberately, unequivocally and decisively manifested by his deed or his conduct. (p. 223).

2. SAME—*Conveyance with Reference to Plat Held Not to Dedicate Land Running from Alley out to a Street.*

Whatever the legal effect of a deed conveying one of a number of lots shown on a plat, together with streets and alleys, and referring to the plat, may be with reference to the status of the street and alleys so shown, it is not sufficient to effect a dedication to public use, of a remnant of land shown on the plat, as running from an alley out to a street, but separated on the plat from the street by a line, as if it were a lot, and having the word "Alley" written across the rear end of it, in such manner as to render it uncertain whether it refers to the strip or the alley at the rear thereof. (p. 223).

3. SAME—*Not Effected by Public Recognition Unless Owner Acquiesces for Statutory Period.*

If private property is used by the public as a street or alley and recognized by the public authorities, as a public highway, by work done upon it, a dedication thereof is not thereby effected unless the owner of the property acquiesces in such use and recognition, for the statutory period of limitation. (p. 223).

4. SAME—*Acquiescence Negatived by Owner's Conveyance Within Limitation Period.*

Acquiescence of the owner in such use and control, manifested merely by his silence, is negatived or terminated by his conveyance of the property to another, within such period of limitation. (p. 225).

5. SAME—*Public Control Held Insufficient to Show an Implied Dedication and Acceptance.*

If an isolated and equivocal act done upon a piece of land by the public authorities, such as grading one end of it, fronting on a street, so as to make it accessible from the

87 W. Va.

street, as if it were an alley, can be regarded as an attempt on the part of the public authorities to assume control thereof for public purposes, their failure to continue to perform acts upon it, significant of public dominion and control, amounts to an abandonment of the attempt, and, in such case, there is neither sufficient public use and control nor acquiescence on the part of the owner to make out a case of implied dedication and acceptance.    (p. 225).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Mercer County.

Suit by Wade Miller against the City of Bluefield. From a decree dismissing his bill, plaintiff appeals.

*Reversed; decree for plaintiff.*

*French, Easley & Easley,* for appellant.
*John R. Dillard,* for appellee.

POFFENBARGER, JUDGE:

The subject matter of the controversy in this suit is a strip of ground 138.5 feet long, 13.6 feet wide at one end and about 30 feet wide at the other.    Upon the assumption that it is a public alley by dedication and acceptance, the City of Bluefield, through its officers and agents, entered upon the lot and removed therefrom a small tool house erected on the rear end of it by the plaintiff and tore down a fence across the front end of it and along the line of what is known as South Street.    Denying the status imputed to it by the city, the plaintiff filed his bill in this suit, claiming title to the land by conveyance and praying an injunction to restrain the city and its authorities from interference with his possession and enjoyment thereof.    From a decree dismissing his bill, he has appealed.

The ground in controversy was a part of a considerable body of land owned by B. S. Higginbotham, bounded on the Northwest by what is now North Street, on the Northeast by Bland Street, on the Southeast by South Street, and on the Southwest by a lot known as the Devilbliss lot, which extends from North Street to South Street. In June 1903, he divided this property into lots, laying off the streets above named. Six of the lots fronted Northeast on Bland Street. In the

rear of them, he laid off a twenty foot alley. From this alley
to the Devilbliss lot, he laid off a fifteen foot alley, and, on
each side of it, a series of lots fronting, respectively, on North
Street and South Street. It is claimed by the plaintiff, that ·
this strip lying between Lot No. 33, fronting on South Street,
and the Devilbliss lot, was too small for a lot and was simply
left as a remnant. On the other hand, the city claims it
was intended for an alley leading out to South Street, from
the fifteen foot alley in the rear of lot No. 33 and the others
of the series to which it belongs. Higginbotham filed his plat
in the clerks office of the County Court of Mercer County, and
has since conveyed most of the lots, if not all of them. On
that plat, the end of the strip next to South Street is not left
open, so as to indicate that it is an alley. Nor is it marked
along its course as an alley. At the north end thereof, the
word 'Alley" appears, written across it, and runs in the direc-
tion of the fifteen foot alley.

By a deed dated, October 4, 1904, Higginbotham and his
wife conveyed four of the lots fronting on South Street to
Royall C. Morrison. By a deed dated, October 9, 1912, Higgin-
botham conveyed all of the strip in question, except a corner of
it, fifteen by eighteen feet, constituting an extension of the
fifteen foot alley, to Morrison who, on June 15, 1914, conveyed
it together with lots Nos. 32 and 33 to Bernard Mason who,
on April 1, 1915, conveyed them to S. A. Mann and he con-
veyed them to the plaintiff, Miller, May 12, 1917. Morrison
says there was no fence across the south end of the strip, and
that the Devilbliss lot and Lots Nos. 32 and 33 were all fenced,
at the date of his purchase. Mason swears there was an old
fence across it at the time of his purchase and during the
period of his ownership, less than a year. Hancock, a former·
owner, seems to say there was an old fence running from the
Devilbliss corner across this strip and in front of Lots 32 and
33, when he purchased them. He never owned the strip in
controversy and of course did not fence it. He says he did
fence his own property, Lots Nos. 32 and 33 and possibly some
others owned in connection with them. M. M. Clifford, who
has been city Commissioner of Streets, since July 1, 1906,

claims this strip was open and unobstructed and used by the public up until three or four years before the date of the taking of his testimony, and that then somebody put a fence across from the Devilbliss corner to the Miller corner, and so arranged it that people could pass through bars or a gate. The tool house stood on the lot for only about three or four months.

The use made of the strip by the public is not very well defined as to its extent. It is unlikely that there was very much travel on the fifteen foot alley dividing the lots of the block. It terminated in another twenty foot alley and the latter was not used for some time. It lay in a ravine and on rough ground. That this strip was used to some extent by the owners of the lots abutting on the fifteen foot alley and by other people having occasion to go to those lots is very probable. It does not appear how many of those lots have been improved nor to what extent any of them have been improved. However, Morrison denies that it was used at all at the date of his purchase or while he owned it, and also that there was any evidence that it ever had been used. He claims it could not be used to any advantage because of an embankment at the South Street end. Mason says he does not think it disclosed any evidence of use as an alley, at the date of his purchase. Miller says the embankment in front of it was just about like the embankment in front of lot No. 33. A concrete sidewalk was laid in front of Lots 32 and 33 and this strip, while Mason owned them. There is nothing on the surface of the sidewalk, indicating provision for a crossing at the end of the strip, but a witness says the work was made heavier at that point, because it was regarded as a crossing.

The acts relied upon as evidence of acceptance by the city itself have very little probative value. The Street Commissioner says that, sometime in 1907, South Street was graded and that, in connection with the grading thereof, the strip in question was sloped for a distance of fifteen or twenty feet, to make it conform to the grade of South Street and to afford opportunity to use the strip for travel. According to his testimony, it was graded still more at that point in June 1908.

This last work, if any, seems to have been done on the occasion of the laying of the sidewalk on South Street. Beyond this work done in connection with the grading of the street and the laying of the sidewalk, none was ever done on the strip by the city. The only other official act relied upon, as one of recognition by the corporation, is the designation of part of the strip, as an alley, by the City Engineer, on a plat made by him. There is no proof that this plat was ever adopted by the city or that it was ever brought to the attention of any claimant of the strip of ground.

Whether the deed from Higginbotham to Annie L. Thompson, conveying to her one of the lots fronting on Bland Street and referring to the plat of his lots, amounted to a dedication of the streets and alleys shown on the plat, as is suggested in *Pence* v. *Bryant,* 54 W. Va. 263, it is unnecessary to inquire, for the plat itself, as to this strip of ground, is equivocal and uncertain. On it, the south end of the strip is not left open in the plat, as an alley or street always is, and the position of the word "Alley" makes it uncertain whether it applies to the fifteen foot alley or to this strip of ground. Intention to dedicate being the vital principle of a dedication of property to public use, the declaration of such intention, whether by deed or by conduct, must be deliberate, unequivocal and decided, manifesting a positive and unmistakable intention permanently to abandon the property to public use. *Pierpont* v. *Harrisville,* 9 W. Va. 215; *Walker* v. *Summers,* 9 W. Va. 533; *Boughner* v. *Clarksburg,* 15 W. Va. 394; *Miller* v. *Town of Aracoma,* 30 W. Va. 606; *Morlang* v. *City of Parkersburg,* 84 W. Va. 508, 100 S. E. 394; *Hicks* v. *City of Bluefield,* 86 W. Va. 367, 103 S. E. 323. In view of the uncertainty and indefiniteness of the plat, referred to in the deed, as to the status of the strip of land in question, it is impossible to say there has been any dedication by deed; whatever the law may be as to the effect of a deed conveying a lot and referring to a plat on which it is designated.

Nor, under the circumstances disclosed by the evidence, is an implied dedication possible. If the use of the strip in question by the public was general in its character, as it seems

not to have been, the supposed assent thereto was withdrawn, or the owner's intention not to dedicate was made manifest, within less than ten years, by his conveyance of the strip to Morrison. Mere use by the general public for a period short of ten years is not sufficient proof of a dedication or acceptance. *Yates* v. *West Graflon,* 33 W. Va. 507, 512; *Hicks* v. *City of Bluefield,* cited. Manifestly, acquiescence in public use, by Higginbotham, was terminated by this act, for it was one inconsistent with continuance thereof. As the conveyance was made in 1912, and the controversy we have here arose in 1919, less than ten years from that date, there has been no such period of public use and acquiescence by Morrison and his successors in title, as is requisite to effect a dedication and acceptance, under the principle above stated.

An express dedication, even though oral, if immediately accepted and acted upon by the public authorities, would no doubt be irrevocable. In this case, however, there is not the slightest proof of an express dedication. If there is any at all, it is an implied one. In such cases, the acts done by the public authorities signifying intention to claim property for public purposes, do not have the same potency on the question of dedication and acceptance, as they do in cases of express dedication. If the public authorities recognize land as public property, as by working a road used by the public, their acts do not prove dedication and acceptance, unless they are acquiesced in by the owner for a long period of time. *Ball* v. *Cox,* 29 W. Va. 407; *Yates* v. *West Graflon,* cited; *Kelley's Case,* 8 Gratt. 632. In such cases, the character of the acts done, knowledge or lack of knowledge thereof on the part of the owner, and of their character, and the intention indicated by them, all bear upon the question of the intention to dedicate. *Hicks* v. *City of Bluefield,* cited. By its mere assumption of control of a piece of property and the use thereof for public purposes, a municipality cannot effect both a dedication and an acceptance. To effect them, the intent of the owner and the municipality, as disclosed by conduct, must concur. The work the city claims to have done on this strip dates back to 1907 and 1908, and it may be safely assumed, that there was

not much evidence of it upon the ground, in 1912, when Higginbotham conveyed the land to Morrison. There is no pretense that any such work was ever done after the latter became the owner. Hence, if it can be said that the city, by the equivocal act of grading down the bank on the front of this lot, in connection with its grading of South Street and the laying of the sidewalk, attempted to assume control of the land, it is plain that there has been no acquiescence therein by the owners, for the attempt was apparently discontinued more than ten years before this controversy arose. The record discloses no suggestion of municipal dominion of the property or municipal recognition of it as public property, since 1908.

From these principles and conclusions, it follows that the decree complained of will have to be reversed and a decree entered here, perpetually enjoining the defendant in conformity with the prayer of the bill.

*Reversed; decree for plaintiff*