# CHARLESTON.

JOHN L. DICKINSON *v.* CHARLES RAND

(No. 5595)

Submitted November 9, 1926.   Decided November 16, 1926.

1. HIGHWAYS—*Where Upon Solicitation of Landowners That the County Court Open and Construct a Public Road Through Their Land the Court Surveyed, Laid Out, Constructed, Maintained and Opened for Travel a Road, a Public Road is Established Although no Formal Written Dedication of Rights of Way by Landowners is Had.*

Where landowners solicit the county court to open and construct through their land a road for public travel, and the court immediately has the proposed road surveyed, laid out, constructed, and maintained by county road funds, and has opened the same for public travel, a public road has been

established, and all persons may use it as such, although there has been no formal written dedication of rights of way by the landowners over whose lands the road is constructed.    (p. 577.)

2.  APPEAL AND ERROR—*Decree Based Upon Finding of Fact from Conflicting Depositions Will Not be Reversed.*

The burden of proving the terms of an oral agreement rests upon the party seeking to enforce that agreement; and a decree based on a finding of fact from depositions conflicting and of such doubtful character that different minds might reasonably reach different conclusions therefrom, will not be reversed, although the appellate court, if it had acted in the first instance, might have rendered a different decree. (p. 582.)

3.  PLEADING—*Matter Not Contradictory to Original Pleadings and of Such a Nature as Should be Before the Court in Making Proper Disposition of Issues Involved May in the Discretion of the Trial Court be Set up by Amendment.*

A court has discretion in allowing an amendment to be made in a pleading; and where the matter set up by amendment is not contradictory of the original pleading, and is of such a nature that it should be before the court in making a proper disposition of the issues involved, it is not error to permit the amendment to be made.    (p. 584.)

Appeal from Circuit Court, Kanawha County.

Suit by John L. Dickinson against Charles Rand.  Decree for plaintiff and defendant appeals.

*Affirmed.*

*Price, Smith & Spilman,* for appellee.
*Henry S. Cato* and *Murray Briggs,* for appellant.

LIVELY, JUDGE:

This controversy is over an alleged contract for right of way for Rand over property owned by Dickinson consisting of three tracts lying contiguous to each other, namely, 1 9/10 acres, 30 7/10 acres purchased from Grishaber, and a tract known as the Swann tract, acreage not stated; the claimed right of way running from "G" to "P" to "M" on the map. The map will aid in understanding the controversy.

Rand owns 27 acres purchased.from Glover, which lie south
of the lands above mentioned and adjoin C. A. Grishaber.
The northwest portion of his land is bounded by an old county
road leading from Davis Creek (still farther south) to the
City of Charleston, "J", "H", "G", "F", "D" on the
map. Between "G" and "E" is a very steep rocky grade,
designated by the county surveyor as an "impossible grade".
In 1921, the people in that vicinity importuned the county
court to change the location of that road so as to eliminate
this "impossible grade". As a result, the county court opened
and constructed a road from "G"-"P"-"M" to "D" through
the two Grishaber tracts (1 9/10 acres and 30 7/10 acres) and
the Swann tract, subsequently purchased by Dickinson. The
county surveyor laid out the road, the county court let the
contract, or did the work, and paid for it, and has since main-
tained it. It was opened to the public, and has been used as a
public road since about 1921. It seems there were no formal
paper grants of rights of way from the landowners over whose
lands this new road was built. The uncontradicted evidence
is that these landowners solicited the building of the road and
gave permission to the county court to take the necessary land
for that purpose. They dedicated the right of way for public
use without compensation. Grishaber recognized it as a public
road through his land, for in his deeds to the 1 9/10 acres and
the 30 7/10 acres, made subsequent to the building of the
road, he uses the road in describing the metes and bounds,
and designates it as the "new country road", and the "county
road". A point of error alleged against the decree is that the
court erred in finding and decreeing that the new county road
above designated, was in fact a public county road. There
can be little doubt that the landowners dedicated their land
occupied by the road for that purpose, that the road was
constructed with county funds under county supervision, and
is now maintained as a public road. The trial chancellor was
not in error when he decreed that it was a public road. *Miller*
v. *Bluefield,* 87 W. Va. 217; *Buntin* v. *Danville,* 93 Va. 200;
*Burke* v. *County Court,* 70 W. Va. 174; *Boyd* v. *Woolwine,* 40
W. Va. 282; *Hicks* v. *Bluefield,* 86 W. Va. 367.

Dickinson, after he had purchased the Swann tract, negotiated for and secured from the county court a change in the road on the Swann tract from ''N'' to ''P'', it having originally run from ''N'' to ''P'' by way of ''O'' on the map. He recognized it as a public county road under the supervision and control of the county court. Inasmuch as there had been no formal dedication in writing of the right of way by the landowners to the county court, and as there was no record of the establishment of the road as set out in Sections 137 and 138, Chap. 43, Code, it seems there was a question in the minds of Rand and Dickinson as to whether the road was in fact a public road, and this doubt was apparent as a factor in the agreement or understanding out of which the litigation springs.

In August 1922, Rand acquired for Dickinson the 1 9/10 acres and took title thereto from Grishaber in his (Rand's) name. Dickinson furnished the money, and the purchase was for him. On March 20, 1923, Rand purchased and took title to the 30 7/10 acres from Grishaber, for Dickinson, the latter furnishing the purchase money amounting to over $30,000.00. Rand was to have 5% for his services.

A short time before the purchase of the last tract for Dickinson, and when it became apparent that he would close the purchase from Grishaber, Rand became concerned about a right of way for ingress and egress to his 27 acres lying south of Grishaber, to the City of Charleston through the lands so purchased by him and through the Swann tract to Peyton's Lane (between ''M'' and ''D''), that is, he wanted to be assured that he could travel that route from ''G'' to ''P'' to ''M''. It seems that he had at one time proposed to Dickinson that the new county road at the point ''G'' be closed so as to depreciate the property lying south of that point, in order to make purchases proposed at reduced prices; this Dickinson refused to countenance.

The 30 7/10 acre tract was being purchased by Dickinson for C. A. Cabell who went upon the land accompanied by Dickinson and Rand, and Cabell said he did not want the property with the road on it as then located and suggested

that its location at the point "G" should be changed to avoid a deep cut there, by going around a high elevation at that point. So, Rand conceived that the road might be closed or discontinued from "G" to "P" to "M", thus forcing him and the general public to travel over the old road from "G" to "D" on which was the "impossible grade"; and he claimed in this suit that Dickinson agreed to grant him a right of way over and through his lands. That alleged agreement is the basis of this controversy. In the fall of 1923, Dickinson requested Rand to deed the two tracts to him, the rightful owner; Rand refused, unless Dickinson would give him right of way over the lands purchased from Grishaber and over the Swann tract. This suit followed. The decree required Rand to make deed to the two Grishaber tracts to Dickinson with special warranty, without reservation for rights of way in favor of Rand over the two tracts and the Swann tract, but subject to easement of the county road as now located on these properties. This appeal followed; and Rand says: (1) that it was error to decree that the road "G"-"P"-"M" was a county road (we have already disposed of that assignment of error); (2) that the court erred in finding that Dickinson's version of the agreement to the effect that Rand should be given rights of way over the three tracts was contingent upon the ascertainment that the newly laid out road was not a public road, was the agrement; and (3) that it was error to permit Dickinson to amend his reply to Rand's claim for affirmative relief in his answer.

What was the agreement? This question is the crux of the controversy. On this point we have three witnesses; Rand on the one side, and Dickinson and Miss Jones on the other. It is not very clear just what Rand claims was the agreement. The substance of it is that he was to have a road through the lands from "G" to "M" (Peyton's Lane). He says the agreement was, "That I was to have as far as my understanding was concerned, an outlet to and from my own property to Peyton's Lane by way of a system of roads, or if the roads were to be changed, they were to meet my approval." On February 17, 1923, he wrote Dickinson acknowledging re-

-ceipt of the money advanced for the option from Grishaber, and in this letter he said: ''It is understood and agreed, however that when giving you a deed to the Grishaber property I will provide for ingress and egress in such a way that I deem best, and that will protect me on the land I own behind you.'' Dickinson replied on February 21st, relative to the ingress and egress: ''These things are sometimes so serious that I believe it advisable for us to have some definite understanding as to just what you want in the matter.'' Rand wrote Dickinson on the 26th of February, ''I had in mind when writing as of the 17th that on delivering the Grishaber deed to you I would have incorporated in it my option to throw open at my will and when so disposed that certain road running through yours and that is now being used as a medium of travel.'' He added that a letter from Dickinson guaranteeing to him certain rights and privileges would be equivalent. Dickinson did not reply to this letter, and a day or so before the deal was closed with Grishaber on March 20th, Rand went to see Dickinson at the latter's office, when he says, the agreement was reached. He says on this occasion he told Dickinson, ''I would not close this deal unless I was granted these rights as to roadways so that I could get back and forth to my own land. He said 'All right'. I felt then that it was O. K. to go ahead with the deal.''

On March 20th, Rand wrote Dickinson acknowledging receipt of $17,000.00 purchase money, and stating that he had closed the deal and taken title to the 30 7/10 acres, saying that he would convey it to Dickinson at any time upon request; and added, ''In conveying this property to you, I will make such reservation of right in the existing roads running to and through the property *as I think best.*'' This appears to be the last communication either verbal or written between the parties relative to this right of way controversy, except the demand for and the refusal of the deed. This last letter of Rand's throws little light on what the agreement was, except that it might be inferred that Rand was claiming that Dickinson had agreed that Rand should make such reservations in the existing road as he, Rand, should think best.

Dickinson says that when Rand came to see him about the right of way just before the purchase from Grishaber, he seemed to be afraid that the road through the property would be closed up, and that they finally came to the understanding that if it turned out that the road was not a county road, then he should have a right of way on the approximate location of the road through the Grishaber and Swann properties, except that at the high point "O" he (Dickinson) would endeavor to get a change on a better grade; but if it turned out to be a county road, he (Rand) was to travel over it "with the rest of the folks." His version of the agreement is summarized in answer to this question on cross-examination: "I believe you have just said that your agreement with Mr. Rand was that you at that time, which was around February 20, 1923, believed that the road through the Grishaber property was a county road, but if it turned out not to be a county road you would give him a right of way. Is not this substantially your testimony?" Ans. "Yes". Miss Jones who was present when the agreement was made, substantially corroborates Dickinson. She was asked, "In case the road was a county road what was the understanding?" Ans. "That Mr. Dickinson could not keep him from going over it, because it would be a public road and he would have the same right to go over it as anybody else would." Ques. "And if it was not a county road, then what?" And. "That Mr. Dickinson would give Mr. Rand a right of way over the road as it was then built through his property." Dickinson also said, with reference to the agreement, that, "I agreed at the time that if he (Rand) or anybody else should close that county road, or rather find out that it was not a county road, then he should have a right of way over my property along approximately the road the county road now is, and that I was going to use any influence I had with the court to bring the road from the point 'M'-'N'-'O'-'P' to 'N'-'P' approximately." It is on this expression ("that if he or anybody else should close that county road") that appellant Rand bases his contention that if ever the road should be closed by the county court, Dickinson agreed to give a right of way over the same route.

Taking that excerpt alone there would be merit in the contention that whether the road was or was not a county road and if a county road and ever changed or closed as such by the county court, Rand should have a right of way over the same route irrespective of change or discontinuance by the county court. But when the entire testimony of the witness is examined, it will not bear out that interpretation. The circuit judge so concluded, and put in the decree that he found from the preponderance of the evidence, that in case it should be ascertained that the road ("M"-"N"-"P"-"G") was not a public road, then Rand should have a private right of way over the two Grishaber tracts and the Swann tract. Rand's version of the agreement is substantially that he should have a right of way in the existing roads as he might think best irrespective of the public or private character of these roads. He evidently desired to protect himself in a right of way against any change in the road from any source or cause, and was under the impression that Dickinson had agreed to give it to him whatever the character of the road might be, either public or private, or whether the county court, or any individual should thereafter discontinue it or change it. Dickinson says no such sweeping and comprehensive agreement was reached, but does say what that agreement was, as above set out.

The evidence is conflicting, and we can see nothing in the circumstances or situation of the parties which would cause the evidence of Rand to outweigh that of Dickinson and Miss Jones. A decree based upon depositions which are conflicting and of such doubtful character that different minds might reasonably reach different conclusions as to what are the real facts, will not be reversed, though the appellate court might have rendered a different decree had it acted in the first instance. *Ross* v. *McConnaughy,* 85 W. Va. 199; *Baughman* v. *Hoffman,* 90 W. Va. 388; *Whiteman, Admr.* v. *Backus,* decided this term. Rand in his cross-bill answer seeks affirmative relief, and the burden is on him to prove his case by a preponderance of the evidence. It will be observed that the decree directs the deed to be made with special warranty and

with reservation of the easement of the county road as now located through these properties. We think this decree properly construed protects Rand in his right of passage over the roads to and from his property as contemplated in the agreement.

We do not think the letters from Rand relative to the agreement would estop Dickinson from claiming that the agreement was otherwise than that attempted to be made out by the letters. Upon receipt of the first letter, he suggested that they had better have an understanding. That understanding was reached, according to both parties, when Miss Jones was present a day or so before the deal was closed. The last letter was written after the deal was closed, and Rand says in that letter he would make such reservations in the roads as he should think best. That letter, although not replied to by Dickinson, could not change that agreement. The deal had been closed.

It is asserted that it was error to permit Dickinson to amend his reply to Rand's cross-bill answer asking affirmative relief in respect to the right of way, on the ground that the amendment was inconsistent with the original reply. Rand in his answer asking for affirmative relief in respect to the alleged right of way agreement, charged that the road in question had been used by him and the public for many years and it was the only feasible roadway by which he could get from his land to and from the county road. In Dickinson's original reply to this statement he denied that this road was an outlet to the county road from defendant's premises and had been used by him for many years, and that it was the only feasible way for Rand and the people of the neighborhood to get to the county road from their lands. By the amendment he was not permitted to strike out that part of the original reply, but was permitted to add thereto an allegation to the effect that the road in question over Peyton's Lane through the Swann tract and the Grishaber tracts was laid out and constructed by the county court as a new county road, and that the public generally had not been using it for many years, but only since the year 1921, and that defendant along with the public

generally has the right to use it without permission from the plaintiff or anyone else, and that defendant has full right to use that new road or the old road to the City of Charleston and vicinity. We cannot see wherein the amendment permitted was in direct conflict with the original reply. At the time the amendment was made the parties had taken evidence as to the character of the new road, and its character as a public road was an issue. It is insisted here by Rand that the road is not a public way. A court has discretion in permitting amendments, and it is not error to permit an amendment, not contradictory to the original pleading, which sets up matter proper to the determination of the matter involved in the litigation. *State* v. *Central Pocahontas Coal Co.,* 83 W. Va. 230.

The decree is affirmed.

*Affirmed.*