# CHARLESTON.

### TOWN OF GLENDALE *v.* GLENDALE IMPROVEMENT COMPANY *et al.*

### (No. 5718)

### Submitted January 18, 1927.   Decided February 1, 1927.

DEDICATION—*Order Ambiguous As to Acceptance of Dedication of Streets and Alleys Should be Construed by Acts of Parties Thereunder and Circumstances Under Which it Was Made; Orders of County Court Held Not to Show Acceptance of Dedication of Streets and Alleys in Unincorporated Town (Const. Art. 8, § 24).*

An order of a county court which does not in terms accept an offer of dedication of streets and alleys in an unincorporated town, but which is ambiguous and uncertain in that regard, should be construed as to its true intent and purpose by the acts of the parties thereunder giving it practical construction, and the facts and circumstances under which it was made.

(Dedication, 18 C. J. § 81 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

WOODS, JUDGE, absent:

Appeal from Circuit Court, Marshall County.

Suit by the Town of Glendale against the Glendale Improvement Company and others for an injunction. From a decree for plaintiff, defendants appeal.

*Reversed; bill dismissed.*

*D. B. Evans, Erskine, Palmer & Curl,* and *Poffenbarger, Blue & Dayton,* for appellants.

*Charles E. Carrigan, City Sol.,* and *Jay T. McCamic* and *McCamic & Clarke,* for appellee.

LIVELY, JUDGE:

The bill charges, in substance, that defendant's predecessor in title, William Erskine, Trustee, in 1891 laid off the Town of Glendale into lots, streets, alleys and parks on a plat thereof duly recorded, and dedicated the streets, alleys and parks to public use; that acceptance of the dedication was made at various times by the County Court of Marshall County; but that in November, 1923, defendant attempted a revocation of the dedication of the streets, alleys and parks in division No. 1 lying between the Baltimore & Ohio Railroad and the Ohio River, and had taken possession thereof, defying public use; that plaintiff Town of Glendale, after its incorporation as such in 1924, had formally accepted the dedication; and the bill prayed for an injunction to restrain defendant from changing said streets, alleys and parks in division No. 1 or from exercising any control or ownership thereof. The answer admitted the dedication by Erskine, Trustee, but denied acceptance thereof by any public authority before its withdrawal from dedication in November, 1923, about two months before the Town was incorporated, and the answer averred that prior to the incorporation of the Town it had replatted division No. 1 in such a manner as to abolish the division thereof into town lots, and had dispensed with some of the streets and alleys and the two parks originally laid out therein. A map showing the original Erskine plat is incorporated in the case of *Rudolph* v. *Glendale Improvement Company,* handed down this term, a reference to which map will aid in the visualization of the subject matter of this controversy. A statement of the acreage in division No. 1, its location, physical character and its relation to the other divisions, will be found in the opinion in the *Rudolph* case.

The controlling issues in this case were: (1) whether there had been an acceptance of the dedication of the streets, alleys and parks by the county court, as laid out in division No. 1; and (2) whether defendant had power and right to revoke the dedication, and withdraw from public use said streets, alleys and parks by its resolution so doing of Nov. 21, 1923,

duly recorded.  Upon the bill, exhibits, answer and evidence taken in the *Rudolph* case (and stipulated to be read in this case), the court decided the issues in favor of plaintiff, and by decree of February 5, 1926, restored the original Erskine plat, required the streets, alleys and parks delineated thereon to be for public use and kept open, annulled the revocation of November, 1923 as void; and restrained defendant from doing further acts of revocation; and required it to remove all fences and obstructions placed by it on the public easements.  Defendant appealed.

There can be little question that Erskine in 1892 formally offered the ways and parks involved for public use; nor that defendant as his successor, in November, 1923, formally withdrew the offer; nor  that plaintiff Town by ordinance of March 2, 1925 accepted for public use all of the streets &c., laid out on the Erskine plat of 1892.  A dedication is an appropriation of land to some public use made by the owner, and accepted for such by or on behalf of the public.  Until such acceptance the owner may withdraw all or any portion of the land so dedicated.  *Point Pleasant* v. *Caldwell*, 87 W. Va. 277.  The streets and alleys in division No. 1 were never opened or traversed by the public, nor were the parks used as such.  The town grew up on the other divisions east of the Baltimore & Ohio Railroad, and was built away from division No. 1, extending over about 600 acres of land on which residences were erected, five industries located; water, telephone, electric light, gas and sewer systems were installed, and the streets opened up.  No improvement whatever was made in division No. 1.  No lots were sold, and no public utility lines were located thereon.  It remained practically in the same condition as when offered for public use in 1892.  There was an acceptance by the general public of the streets laid out east of the railroad, and actual use was made of them.  With these ways so taken and used by the public we are not concerned, for they were not attempted to be withdrawn from public use.

Plaintiff's reliance to support complete acceptance is placed upon five orders of the county court, four of which orders re-

late to franchises granted to public utilities, and the other relates to supervision of roads, streets and alleys in Glendale. Acceptance of the dedication offered in the Erskine plat is based on these orders. Defendant denies that these orders constituted an acceptance of all the ways on the Erskine map, and denies that by reason of them it was estopped from withdrawing the ways and parks in division No. 1 from the offered dedication. Thus the controlling issue was raised.

The first order is dated March 21, 1910, and is a franchise to a water company for a period of years to lay pipes under the surface of such of the public roads, streets and alleys in Glendale, "which may be under the control of this court", as may be convenient therefor. Another franchise to construct a sewer system, dated May, 1922, gives the Glendale Improvement Company and B. M. Spurr permission to lay a sewer system, "On, in, under and through certain streets and alleys of Glendale," naming them, none of which are in division No. 1. Under this franchise a mainline sewer was authorized to be built crossing Baltimore Street and extending to the property line of the Glendale Improvement Company. This order rather negatives acceptance of the Erskine plat as regards the ways in said division. The telephone franchise, dated Oct. 28, 1913, granted to the Central Telephone Company, is general in its nature, and gives the right to erect poles &c., on the roads, streets, alleys and highways within the limits of Marshall County. It is obvious that the county court was only giving to the telephone company a franchise on such public ways over which the former had jurisdiction, and this order cannot be considered as a direct acceptance of the ways on the Erskine plat. The franchise granted to the electric company in 1916, extends to "the streets, roads, alleys and public grounds in the unincorporated village of Glendale as they are now, or may hereafter be laid out." By this order there is no direct and unequivocal acceptance of the entire Erskine map. It could be argued that under this order the court had accepted in advance any street or alley which might thereafter be laid down on any map and offered for public use. What streets were then

"laid out" in that village? Surely those designated on the plat of 1892, in division No. 1 had not been laid out on the ground. There was nothing there but a field. Many of those east of the railroad where the town had grown, had been laid out and were in public use. A county road ran through that part. The electric light company was seeking a franchise to serve these dwellings, schoolhouses and grounds, public utility properties and business houses, where revenue would be derived; and its contemporaneous and subsequent acts so indicated. It must be assumed that the county court was not attempting to give a franchise on rights of way and grounds over which it had no jurisdiction.

We find no authority in a county court to assume jurisdiction, maintenance and control of public parks in or near municipalities. Under the Constitution, Art. 8, Sec. 24, they, "have the superintendence and administration of the internal and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay out and disburse the county levies." We do not think they have power to tax for the maintenance and care of public parks. But we do not find in the orders of the county court on which plaintiff relies any specific mention of an acceptance of public parks as such; or, in fact, any mention of parks whatever.

The remaining order, entered in December, 1912, says: "It is ordered by the court that the road supervisor of Washington District exercise control and supervision of the roads, streets and alleys of Glendale, which has been dedicated for public use." It is upon this order that chief reliance is placed. The order in terms does not accept the offer of dedication made by Erskine in 1892. There is no reference to the plat filed by him. It is indefinite, uncertain and equivocal. It must be remembered that dedication to be complete must consist of an offer coupled with acceptance. Black's Law Dictionary, p. 340; Washburn on Easements (4th ed.) 246. The phrase in the order, "which *has* been dedicated" seems to indicate a singular subject, where the subject of the verb is plural. It appears that one of the main streets running

through the town north and south had been used as a public road and had been treated and maintained as such, and other streets leading into this public road had been opened and treated as public thoroughfares by the townspeople and the public generally. Properly construed, this order placed under control and supervision of the road supervisor these streets which had been opened and treated as public ways but which had not theretofore been accepted, either directly or impliedly as such by the county court. The president of the county court said that was the intention of the order. The order being ambiguous, we think his evidence admissible. But even if it was incompetent, the order not being a direct acceptance, the circumstances and acts of the parties under that order may be considered in determining its true meaning and purpose. The supervisor never undertook to supervise or exercise dominion over the paper ways laid down on the plat of division No. 1. The field remained practically as it had been since 1892, and portions of it cultivated, including the streets and alleys as delineated on the map. It is very doubtful if the statutes giving jurisdiction to the county court over roads and ways, and making it liable to persons injured thereon by reason of being out of repair, authorized it to take over for construction and maintenance streets and alleys in villages, unopened and not needed for public travel. See Elliott on Roads and Streets (1st ed. ) p. 87. We must assume that the county court did not intend to shoulder an unnecessary and useless burden, under such doubtful statutory power.

An acceptance of an offer of dedication must be shown by evidence that is clear, satisfactory and unequivocal, either by resolution of record, or by acts of the proper authority recognizing the existence of the way as a public one and holding and treating it as such. *Klein* v. *Reinhart*, 163 Ill. App. 257; *Chicago* v. *Ry. Co.*, 152 Ill. 561. Approval of a plat of a sub-division by a city council is not an acceptance of the streets shown on it. *People* v. *Massieon*, 279 Ill. 312. See *Hicks* v. *Bluefield*, 86 W. Va. 367; *Plumer* v. *Johnson*, 63 Mich. 165; *Cass County* v. *Banks*, 44 Mich. 467. ''The

general rule is well settled that a dedication is not binding and conclusive on either party until acceptance, proof of which must be unequivocal,'' 18 C. J. 72, Sec. 67, citing *Princeton* v. *Gustavson*, 241 Ill. 566. Under these authorities and many others of like import which could be cited, and under the circumstances under which these county court orders were made, their lack of direct and specific acceptance, and the practical construction given thereto as evidenced by the acts of the parties, we are constrained to hold that they do not clearly evidence an intention to accept the offer of dedication of the streets and ways laid down by Erskine, Trustee, on division No. 1 of the village of Glendale. The other issue, namely; whether defendant had the right and power to withdraw offer of dedication of the ways in division No. 1, is answered in the affirmative by the decision in *Point Pleasant* v. *Caldwell*, 87 W. Va. 277.

The decree will be reversed and annulled, and the bill dismissed.

*Reversed; bill dismissed.*