# CHARLESTON.

THE CITY OF BECKLEY *v.* E. H. CROUCH *et als.*

(No. 6379)

Submitted April 30, 1929.     Decided May 7, 1929.

*J. E. Summerfield, John Q. Hutchinson, Floyd M. Sayre* and *W. H. Rardin,* for appellants.

*D. D. Ashworth* and *W. H. File,* for appellee.

LIVELY, JUDGE:

The prayer of the city's bill is for a mandatory injunction requiring defendants Crouch and Rodgers to remove a rock wall located on a strip of land at the southeastern intersection of Third Avenue and West Neville Street fronting eighteen feet on said street and extending back with the eastern line of said avenue one hundred sixty feet with an eight foot width at its southern end; and to enjoin them from further obstructing said strip. The decree of March 1, 1928, granted the relief prayed for from which Crouch, C. M. Rodgers and Vena E. Rodgers (his wife) appeal.

A photostatic copy of plaintiff's "J. W. Campbell map" will show the location of the strip and visualize the controversy. This strip is within the lines connecting A, B, C and back to A delineated on the map. The city claims the strip as a part of Third Avenue dedicated to public use by Azel Ford by his map of 1902, and accepted by the city. Defendants deny acceptance by the city of the Ford offer of dedication, and deny that the city ever had possession of, worked on, or laid claim to the strip in controversy.

In July, 1902, Ford, owning about fifty-one acres (of which the strip in controversy is a part), laid part of his tract out into lots and streets on a map which he named the "Ford Addition to the town of Beckley". Neville Street was laid down on that map as the northern boundary of the "Addition" from which First, Second, and Third Avenues were projected running in a southerly course parallel to each other except where First Avenue joined Neville Street. Three cross streets, running east and west, designated as First, Second and Third Streets, were laid down, parallel to each

other. The blocks between these streets and avenues and adjoining them were lettered from "A" to "P", the strip in controversy being a part of Block L (or out in Third Avenue as laid down on the map where it joins Neville Street), and the lots in each block numbered; but there was nothing on the map showing the scale, or width of the lots, streets and avenues. Ten or twelve years prior to making the map Ford had constructed a dwelling located about thirty feet from Neville Street, a barn and outhouse in the rear, and enclosed them in a lot with locust posts, pickets and wire, fronting fifty feet on Neville Street and running back about two hundred feet so as to include the out buildings. The fence on the western side (next to, or in Third Street as laid down on the map) remained there until 1912 when Third Avenue was paved to the west of it, and about two years later the stone wall and fence on top of it was built. It appears that when Ford made the map, Third Avenue as laid down thereon ran through this lot, and some of the buildings were in the Avenue as laid down.

On the eastern side of the tract before part of it was laid out into streets and lots, a freight depot on a narrow gauge railroad had been constructed, and the freight delivered and received there was sometimes hauled by teamsters to its destination over the Ford tract into Neville Street (then known as the Logan road) near where Third Avenue joined Neville as shown on the map. In October, 1902, three months after he had recorded his map, he deeded a railroad right of way sixty-six feet wide to some individual, running diagonally across the western block of lots in the addition, which right of way is now owned by the Chesapeake & Ohio Railway Company, on which it maintains its tracks. This right of way, with reference to Third and Neville, is shown on the above map. Ford sold about sixteen lots, referring to his map in the conveyances therefor, up to 1906 when he deeded his entire tract of about fifty-one acres by metes and bounds to T. E. Combs and W. H. and F. M. Rardin by deed dated May 21, 1906, reserving the lots formerly sold and the railroad right of way. In August, 1906, Combs and the Rardins filed a map of the addition, in which there were several changes

made; First Street was moved several feet to the south, and Second Street was located several feet farther north than shown on the Ford map. Several other changes, unimportant here, were made. The sixteen lot owners released by deed their rights in all streets as located by Ford. Third Avenue where it joined Neville was located farther to the west back to Second Street, that is, instead of running straight through and parallel with Second Avenue as laid down on the Ford map, it was deflected at a slight angle westwardly from Second Street to Neville and followed the traveled road or street then being used. This location of that part of Third Avenue to the westward did not include the strip in controversy. The eastern line ran from A to C on the ''Campbell map'' above. The eastern line thereof ran along with the fence which for many years had been standing there, and of course excluded the buildings on the lot enclosed by Ford in 1890. However, the width of Third Avenue was widened from that of the Ford map (said to be forty to forty-five feet) to fifty feet on the Rardin-Combs map.

It appears that this location of Third Avenue to the westward with the eastern line along the fence, now the wall, with a width of fifty feet extended over on the railroad right of way about eighteen feet; so, instead of having a street at that point fifty feet wide, the city now has thirty-two feet only, lying between the rock wall and the railroad right of way. That situation brought about this suit. The city says that Third Avenue has now become one of its principal streets, and it is entitled to fifty feet to meet the public needs; and that Combs and the Rardins having dedicated fifty feet the defendants who now own the strip of eighteen feet wide at Neville running back one hundred sixty feet to a width eight feet on the rear, and who derive their title and possession from Combs and the Rardins, and who purchased with notice of the controversy, should give up the same, the city having superior right thereto. Defendants say they purchased without notice and with reference to the Combs and Rardin map which had been accepted by the city, and that the city is estopped to claim this land which has always been fenced in since 1890. Defendant Rodgers obtained his deed to the back

portion of the Ford lot in 1924; and defendant Crouch was deeded the front portion (fifty feet on Neville running back one hundred twenty-five feet) in 1925. The rock wall had been built by Combs in 1914. The lot on which the wall was constructed was purchased by Combs in 1908 from Rardin. Combs deeded it to Watts in 1924, and the latter made the two deeds herein referred to, one to Crouch and the other to Rodgers.

The land in controversy was within the corporate limits of the town of Beckley when Ford made his map. The city of Beckley was incorporated in 1908 and took in more territory. In 1912 the city contracted for the paving of Third Avenue as laid down on the Combs-Rardin map for its full width of fifty feet including sidewalks, but the railroad company threatened to enjoin any grading on its right of way, and the contractor was directed to and did pave the space lying between the railroad right of way (as located by the railroad) and the west side of the strip now in controversy. Plaintiff's contention is that the city then for the first time discovered that it did not have a fifty foot street as shown on the Rardin-Combs map, but in order to keep the contractor from quitting his contract, instructed him to pave thirty-two feet at that point, and "leave the location of the eastern line of the avenue for future settlement, with the distinct understanding between all parties concerned that the city claimed land east of railroad right of way to make the avenue 50 feet wide." Defendants deny there was ever any controversy with them or their predecessors in title concerning the eastern line of the avenue, and that the controversy, if any, in 1912 was with the railroad company alone of which they had no notice.

The main contention of plaintiff is that, having accepted the Ford dedication on behalf of the town of Beckley, it now has a right of way over Third Avenue as laid down by him, although defendants and their predecessors in title thereto have always been in possession with their fence and buildings. However, plaintiff does not seek to take the full Avenue as laid out by Ford, but only eighteen feet in order to get the fifty feet dedicated by the Rardin-Combs map. If plaintiff took under the Ford map the full width of the avenue as laid

down on that dedication, all of defendants' lot would be taken except about eight feet front on Neville Street and running back with a lessening width. It is argued by defendants that Ford never intended to offer dedication of the avenue through his enclosed lot and buildings although a projection of the avenue as laid down on the map would do so; and the principle is invoked that the offer of dedication must be deliberate, unequivocal and decided, manifesting a positive and unmistakable intention permanently to abandon the property to public use. Citing *Miller* v. *Bluefield*, 87 W. Va. 217, and kindred cases. The deliberate act of surveying out the addition and recording the map of that survey and the selling of lots with reference thereto very strongly indicates intention to dedicate the avenues and streets as laid down on the map, irrespective of his continued possession of the lot through which Third Avenue ran. No immediate use by the public was necessary to disturb his possession. In fact the "Addition" was an old field at the time it was so mapped. It could scarcely be contended that the right of the subsequent purchasers of lots to the use of the streets, as delineated on the map referred to in their deeds, would be subservient to the possession of the dedicator who was their vendor. The reason for the rule that the vendor is estopped from appropriating the land to a use inconsistent with that represented upon the map upon the faith of which the lots were sold, is tersely stated in 18 C. J., p. 60, sec. 44. The purchasers of lots accept the dedication delineated on the map. The same principle would apply with equal force if the offer of dedication had been accepted by the municipality on behalf of the public for public use. Here, the purchasers of lots have waived their rights in the streets as designated and delineated by Ford by duly executed deed and hold street rights only by virtue of the Combs-Rardin dedication of streets. These purchasers' rights to the avenue as laid down by Ford pass out of the picture.

A dedication is an appropriation of land to some public use by the owner and accepted for such use by or on behalf of the public. There are two elements in every dedication; first an offer by the owner of the land, next an acceptance

by or on behalf of the public. Until an offer is accepted, that offer may be withdrawn by the donor. *Glendale* v. *Improvement Co.,* 103 W. Va. 91. Was there an acceptance of the Ford offer by or on behalf of the public? This is the controlling question. There · is no resolution or record evidence of acceptance by the town of Beckley. Acceptance by implication is relied upon by the plaintiff. It is attempted to be shown that the municipality took charge of and expended money and labor on Third Avenue somewhere near the intersection of Second Street as laid down on the Ford map prior to 1906. The evidence to support that theory as given by one or two witnesses is that along *about* the time of the Ford offer, some teamsters hauling freight from a narrow gauge railroad depot located to the southeast of the junction of Third Avenue and Neville Street (then Logan road), in order to avoid a heavy pull up a hill sometimes took their teams down grade near where Second Street was located through the Ford land to where Third Avenue was located, then turned north, and went out to the Logan road (Neville Street) near to and west of the strip in controversy; and sometime during such hauling a mudhole or so was filled up with rocks, presumably by city authority and order. These teamsters followed no well defined passageway. They hauled over the best places. The principal witness to this alleged acceptance (by filling mudholes) says that a bad mudhole on a *fill* was so filled up. This fill was made by dirt which was indiscriminately thrown from a railroad excavation along the western tier lots, and was not thrown there until long after 1902, the time, of the Ford offer of dedication. The time at which the work was done on Third Avenue under city order, if so done, is vague and indefinite. It is very unsatisfactory. The burden is on plaintiff to show acceptance of the Ford offer of dedication before Ford withdrew that offer in 1906 by making his deed to the tract by metes and bounds to Combs and the Rardins. It is quite generailly held that proof of acceptance of offer of dedication must be clear, satisfactory and unequivocal. *Glendale* v. *Imp. Co., supra;* 18 C. J., p. 72, sec. 67; *Point Pleasant* v. *Caldwell,* 87 W. Va. 278. The evidence of acceptance of the Ford offer does not

meet the strict requirement stressed by practically all of the decisions. The Ford offer was withdrawn by his deed of 1906. *Point Pleasant* v. *Caldwell, supra.* It is quite clear that the municipality. accepted the Combs-Rardin map and dedication. As above stated, there were many material changes by ·Combs and Rardin in the addition as laid out by Ford. The municipal acts in taking charge of the streets so laid down by the later map and improving them as so laid down show unequivocal acceptance of that offer. Hence, the city's right to the disputed strip is controlled by that dedication, and it is very clear from the evidence of the city's engineer, that the disputed strip is not within the avenue by that dedication.

The city contends that it is entitled to the disputed strip by user of a portion of it prior to 1914 when ·Combs built the rock wall. The evidence preponderates that there was no such part user. It is apparent that the city accepted the Combs-Rardin dedication, and assumed that Third Avenue at its junction with Neville Street was fifty feet wide. It never discovered that mistake until 1912 when it attempted to grade on the land claimed by the railroad as its right of way. The controversy then arising between it and the railroad has never been settled so far as this record goes. The city then paved thirty-two feet between the eastern line of the street as shown on the ·Combs-Rardin map, and the line of the right of way claimed by railroad company. It is argued that Combs and Rardin having laid out a street fifty feet wide, they and their successors in title should be made to give a street of that width from their property adjoining, but not dedicated. It is claimed that Crouch. and Rodgers knew that the city claimed the strip as a part of the street. The most that can be said of that claim is that defendants had heard that one, or perhaps more, of the lot owners on Third Avenue said that the city made such claim. It must be remembered in this connection that Ford and his successor had title to, and continuous possession of, the disputed strip since 1890, and that the wall was built in 1914. Defendants could well assume that the city had no claim in view of these facts and the well established eastern line of the street. Under

350

such circumstances the equities would be for defendants; granting that the city has an equitable claim against Rardin and Combs because of their mistake in locating a part of the street in the railroad right of way. The city seems to have accepted that dedication without investigation, and is not entirely free from adverse criticism in that regard.

This case turns upon an acceptance by the city of the Ford offer of dedication. Without that dedication it has no legal right of way over the disputed strip; and, as above set out, the city has failed to carry the burden of showing an acceptance by clear, satisfactory and unequivocal proof.

The decree will be reversed, and the bill dismissed.

*Reversed; bill dismissed.*